**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**DANIELLE LEMA**

     **VS.**                 **Civil Action No.**

**FEDERAL HOUSING FINANCE**
**AGENCY,**
**FEDERAL NATIONAL**
**MORTGAGE ASSOCIATION,**
**NATIONSTAR MORTGAGE, LLC**

## COMPLAINT

1.    Plaintiff, Danielle Lema is the owner of real property located at 15 Ninth Street, East Providence, Rhode Island.

2.    Through this action Plaintiff challenges the lawfulness of the attempted foreclosure sale of the residence of Danielle Lema, scheduled for January 30, 2019, by certain Defendants: The Federal National Mortgage Association ("Fannie Mae" or "Fannie Mae"), an agency or instrumentality of the federal government; Fannie Mae's conservator and regulator, the Federal Housing Finance Agency ("FHFA"), a federal agency;  Nationstar Mortgage, LLC, a Delaware Limited Liability Company and loan servicer ("Nationstar") acting as an agent of Fannie Mae and FHFA, through its attorney,  Brock & Scott, PLLC("Brock")

4.    The Defendants Fannie Mae  FHFA, and Nationstar  failed to send the Plaintiff a Default Letter pursuant to the terms of the mortgage, failed to provide the Plaintiff a Notice of foreclosure counseling in conjunction with this attempted foreclosure in violation of R.I.G.L 34-27-3.1 and failed to mail the Plaintiff a Notice of Mediation and seek to exercise the statutory power of sale and seek to and conduct a purported foreclosure sale on the Property on January 30, 2019. Plaintiff seeks declaratory relief, injunctive relief, damages, and other relief from this Court, because Defendants Fannie Mae, FHFA, and Nationstar acted jointly to deprive Plaintiff of her interest in the Property by conducting a foreclosure sale without providing her with adequate notice and an opportunity for a meaningful hearing, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United

States, and other laws, and caused harm to him in various other ways hereinafter stated.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

6.     This Court also has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1332 because the parties in this case are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest or costs and FHFA is an instrumentality of the United States government.

7.     The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391 (c)(2).

8.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

9.      The Plaintiff Danielle Lema is a citizen of the United States who resides at 15 Ninth Street, East Providence, RI 02914 ("Property").

10.     The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq*.

11.     The Federal National Mortgage Association ("Fannie Mae" and "Fannie Mae") is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing, and managing and liquidating federally owned mortgage portfolios in an orderly manner, with a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government. See 12 U.S.C. § 1716.

Nationstar Mortgage, LLC ("Nationstar") is a Delaware limited liability company engaged in the business of collecting debts in this state with its principal place of business located a 8950 Cypress Waters Boulevard, Dallas, Texas, 75019.

6.    The principal business purpose of Nationstar is the collection of debts using the mails and telephone.

7.    Nationstar regularly attempts to collects debts alleged to be due it and others.   It is a debt collector and asserts that it is a loan servicer for Plaintiff's mortgage.  It does business under the fictitious name of Mr. Cooper.

8.    At the time that Nationstar commenced servicing Plaintiff's mortgage, she was delinquent in payments and Nationstar treated her loan as if it were in default

9.    Brock & Scott, PLLC ("Brock") by letter dated December 7, 2018, has scheduled a foreclosure sale for Plaintiff's home on January 30, 2019  at 12 :00 PM, as indicated by Exhibit B.

10.    Neither Fannie Mae nor Nationstar  has  sent Plaintiff a default notice pursuant to the provisions of paragraph 22 of my mortgage.

11.    No default notice has been sent to Plaintiff, pursuant to paragraph 22 of the mortgage. This section of Plaintiff's mortgage provides that before an acceleration of the loan was declared, the Lender was required to send her a separate default notice which shall contained certain language.

12.    Paragraph 22 of her mortgage states:

**Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall   (1) the default; (2) the action required to cure the default; (3) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (4) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a Court action to assert the**

**nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies provided in this Section 22, including but not limited to, reasonable attorneys' fees and cost of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, as provided in Section 15. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including but not limited to, reasonable attorneys' fees and costs of the title evidence; (b) to all sums secured by this Security Instrument; and (c) the excess to the person or persons legally entitled to it.**

13.     Paragraph 22 of the mortgage, contains conditions for the exercise of the statutory power of sale. Specifically the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

14.      Plaintiff has not been mailed a notice in compliance with paragraph 22 or paragraph 15 of the mortgage.

15.     Instead of mailing Plaintiff a default letter, Nationstar mailed what it claimed to be a default letter, dated April 10, 2018, to 1200 Reservoir Avenue, Cranston, RI 02920-6012.

16.     This letter was not deposited into the United States mail until April 12, 2018 and was never mailed to Plaintiff.

17.     A copy of this letter is attached as Exhibit C.

18.     Plaintiff never designated 1200 Reservoir Avenue, Cranston, RI 02920 as her address for mailing of notices.

19.     This was the address of her former attorney, who was not representing her on April 10, 2018 and had not represented her since she had filed Chapter 13 Bankruptcy with another attorney on December 12, 2016.

20.     Paragraph 15 of Plaintiff's mortgage requires that any notice to her in connection with this Security Instrument shall be deemed to have been given to her when mailed by first class mail or when actually delivered to her notice address if sent by other means.

21.     Paragraph 15 of her mortgage also requires that the Notice shall be the Property Address unless she has designated a substitute notice address by notice to the lender.

22.     Plaintiff never designated a change of address to the lender or to any entity.

23.     I have never indicated to  Nationstar or anyone that the address for notices to be sent to her was 1200 Reservoir Avenue, Cranston, Rhode Island 02920.

24.     Since Plaintiff has never changed my mailing address, this Notice was defective.

25.      In addition, Federal National Mortgage Association has not provided her a Notice of Foreclosure Counseling pursuant to R.I.G.L 34-27-3.1.

26.     The former mortgagee, Nationstar Mortgage, through its attorney mailed Plaintiff a Notice of Foreclosure Counseling on behalf of Nationstar, dated August 21, 2018.

27.     A copy of this Notice from Nationstar Mortgage is attached as Exhibit D.

28.     Plaintiff's mortgage was assigned to Federal National Mortgage Association on September 18, 2018.

29.     After September 18, 2018, Federal National Mortgage Association did not provide Plaintiff this statutorily required notice.

30.      This statute provides:

**34-27-3.1. Foreclosure counseling.**

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee shall provide to an individual

consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) **Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void,** without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

31.     Federal National Mortgage Association, nor any entity acting on its behalf has not mailed Plaintiff a Notice of Foreclosure Counseling pursuant to R.I.G.L 34-27-3.1.

32.      Federal National Mortgage Association has not mailed Plaintiff client a Notice of Mediation pursuant to R.I.G.L 34-27-3.2.

33.     Nationstar, mailed Exhibit E to her former attorney,  a purported Notice of Mediation dated  May 24, 2018 to:

Lema, Danielle
Att: John B. Ennis 1200 Reservoir Avenue
Cranston RI 02914

34.     Plaintiff never designated 1200 Reservoir Avenue, Cranston, RI 02914 or 02920 as her designated address.

35.     The Rhode Island Mediation statute requires any mortgagee seeking to foreclosure pursuant to R.I.G.L 34-27-4 to first mail the mortgagee a Notice of Mediation.

36.     Federal National Mortgage Association has never mailed Plaintiff such a Notice of Mediation.

37.     Contrary to the  foreclosure policy of FHFA, neither Nationstar, Fannie Mae nor FHFA provided  Plaintiff an opportunity for an evidentiary hearing with Fannie Mae or FHFA at which she could have an opportunity to:

a.     confront and cross-examine persons who supplied information upon which the foreclosure action is grounded
b.     present arguments and evidence to dispute the allegations of Nationstar, Fannie Mae and FHFA prior to the termination of my  interest in the Property;
c.      be represented by counsel during a hearing prior to the termination of my interest in the Property;
d.      and to have a neutral informal hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

38.     Had Plaintiff been provided an opportunity for a hearing, she could have presented evidence to challenge the foreclosure in one or more of the following ways:

a.   Whether Fannie Mae is the current holder of the Mortgage and authorized to exercise the power of sale;

b.   Whether the Defendants provided all required pre-foreclosure notices under state and federal law and the mortgage documents;

c.   Whether the Defendants sent a Notice of Default that strictly complies with Paragraph 22 of the Mortgage;

d.   Whether the Defendants complied with the provisions of R.I.G.L 34-27-3.1 for this foreclosure attempt:

    e.  Whether the Defendants complied with the provisions of R.I.G.L 34-27-3.2 and afforded  her mediation, and

    f.  Whether the Defendants acted in good faith in their review and offers of loss mitigation.

39.    Fannie Mae under the conservatorship of FHFA is a governmental agency and Plaintiff is entitled to due process of law, which requires it to commence a judicial foreclosure, rather than exercise the statutory power of sale. 12.

## GENERAL FACTUAL ALLEGATIONS

### *The Conservatorship of FHFA over Fannie Mae*

40.    In accordance with the Housing and Economic Recovery Act of 2008 ("HERA"), the federal government established FHFA as a federal agency to supervise and regulate Fannie Mae and affiliated entities, the Federal Home Loan Mortgage Corporation ("Freddie Mac") and affiliated entities, and any Federal Home Loan Bank. See 12 U.S.C. §§ 4502 (20), 4511(b)(2).

41.    Among the powers the federal government granted to the FHFA pursuant to HERA was the power of its Director to place Fannie Mae into conservatorship under the FHFA and the power of the FHFA to operate and control all of Fannie Mae's operations as its conservator.

42.    On or about September 7, 2008, the Director of the FHFA placed Fannie Mae under the conservatorship of the FHFA. See Statement of FHFA Director James B. Lockhart, http://www.treasury.gov/press-center/press-releases/Documents/fhfa_statement_090708hp1128.pdf , accessed May 12, 2014.

43.    In January 2010, the Congressional Budget Office (hereafter "CBO") concluded that the actions taken by FHFA to place Fannie Mae under conservatorship "[made Fannie Mae . . .  part of the government and [implied] that [its] operations should be reflected in the federal budget." Budgetary Treatment of Fannie Mae and Freddie Mac, (Congressional Budget Office Background Paper, 2010), available at www.cbo.gov/publications/41887 at pages 1, 6.

44.    In 2010, the CBO estimate projected cost of the Federal Governments

investment in Fannie Mae between 2009 and 2019 at $389 billion.

44.     In 2013, the CBO again concluded, "the federal government is now the effective owner of [Fannie Mae], any gain or loss arising from a change in the way the distressed mortgages are handled by [Fannie Mae] would ultimately accrue to taxpayers." See Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac (Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02) available at www.cbo.gov/publication/44114   at page 1.

45.     As conservator, FHFA controls all of the powers of the shareholders and board of directors of Fannie Mae. See Federal National Mortgage Association, Annual Report, Form 10-K, for the fiscal year ended December 31, 2014 http://www.fanniemae.com/resources/file/ir/pdf/quarterly-annual-results/2014/10k_2014.pdf ,  , at page 25, 162, 166. Shareholders no longer vote for members of Fannie Mae's board of directors, or on any other matters

46.     On November 24, 2008, FHFA reconstituted Fannie Mae's Board of Directors, appointed all nine (9) members of the Board as well as the Board Chairman, and delegated certain powers to the Board while reserving certain powers to itself.

47.     FHFA may modify or terminate the delegation of authority to the Board at FHFA's discretion.

48.     Fannie Mae's Directors serve on behalf of the conservator FHFA and exercise his authority as directed by and with the approval, where required of the conservator. The Directors have no fiduciary duties to any person or entity except to the conservator FHFA. Accordingly, the Directors are not obligated to consider the interest of the company, the holders of equity or debt securities unless specifically directed to do so by the conservator FHFA. As a result of the conservatorship, Fannie Mae is not managed with a strategy to maximize shareholder returns.  . FHFA, as both conservator and regulator, and the United States Treasury, pursuant to the senior preferred stock purchase agreement, prohibits Fannie Mae from paying any dividends to common shareholders.   The net income of Fannie Mae is not available to common stockholders.

49.     According to the FHFA's September 7, 2008 explanation of the conservatorship, there is "no exact time frame that can be given as to when this conservatorship may end." FHFA's conservatorship of Fannie Mae will end,

according to said explanation, when the Director of FHFA issues an order terminating the conservatorship, after the Director determines that FHFA's "plan to restore the Company to a safe and solvent condition has been completed successfully." See FHFA, <u>Questions and Answers on Conservatorship</u>, (Sept. 7, 2008), available at <u>http://www.treasury.gov/press-center/press-releases/Documents/fhfa_consrv_faq_090708hp1128.pdf</u>.   at page 2;   ("Our conservatorship has no specified termination date, and we do not know when or how the conservatorship with terminate, whether we will continue to exist following conservatorship, what changes to our business structure will be made during or following the conservatorship, or what ownership interest, if any, our current common and preferred stockholders will hold in us after the conservatorship is terminated.").

50.     As a result of FHFA's conservatorship of Fannie Mae, since September 6, 2008, and continuing now and for the foreseeable future, FHFA directly controls and operates Fannie Mae with all the powers of the shareholders, directors, and officers of Fannie Mae, owns title to all the assets of Fannie Mae, and conducts all business of Fannie Mae.

51.     HERA does contain a provision automatically terminating FHFA's conservatorship of Fannie Mae, namely if FHFA's director appoints FHFA as receiver of Fannie Mae. *See* 12 U.S.C. 4617(a)(4)(D).  However, FHFA's control over Fannie Mae will not be terminated upon its being appointed as receiver. There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Fannie Mae will terminate.

52.     Even if the conservatorship were terminated by means other than the appointment of FHFA as receiver of Fannie Mae, Fannie Mae will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement, senior preferred stock, and warrant to purchase common stock, which can only be canceled or modified with the consent of the United States Treasury.

53.     From 2009 through the first quarter of 2012, Fannie Mae received a total of $116.1 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero net worth. Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation preference in

54.     The United States Treasury owns 100% of the senior preferred stock of Fannie Mae, and holds warrants to purchase 79.9% of the common stock of Fannie Mae at a nominal price on a fully diluted basis on the date of exercise. See at page 26, 27; see also Fact Sheet: Treasury Senior Preferred Stock Purchase Agreement http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-8-7_SPSPA_FactSheet_508.pdf

55.     By virtue of the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Fannie Mae, which results in every dollar of earnings being paid to the United States Treasury Similarly, Fannie Mae is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury.

56.     Including the 2014 dividend payments to the United States Treasury, Fannie Mae will have paid a total of $134.5 billion in dividends to Treasury on the senior preferred stock. However, under the terms of the senior preferred stock purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Fannie Mae is not diminished by reason of the dividends.

57.     The CBO considers the payments from Fannie Mae to the Treasure "intragovernmental payments, which to not affect net federal outlays."

58.     Pursuant to the senior preferred stock purchase agreement, Fannie Mae is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate until all of Fannie Mae's liabilities have been satisfied.

59.     Because Fannie Mae was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, because the federal government maintains a substantial ownership interest in Fannie Mae, because Fannie Mae is substantially funded by the federal government, because the Board of Directors of Fannie Mae is entirely appointed by FHFA, and because Fannie Mae is under the control of FHFA and/or the United States Treasury, Fannie Mae is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution.

### *The Agency Relationship between FHFA and Fannie Mae and Nationstar*

60.     Fannie Mae purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Fannie Mae holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors. See FHFA Office of Inspector General Evaluation Report, FHFA's Oversight of the Servicing Alignment Initiative, February 12, 2014, available at http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf  at page 6.

61.     For the mortgages that Fannie Mae purchases, Fannie Mae enters into contracts with mortgage servicers, including the "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.  .

62.     Through the "Servicing Guide" and other agreements, Fannie Mae established certain requirements for its servicers to follow when it performs its servicing duties, which include specific instructions on mitigating losses after borrowers default and conducting foreclosures on behalf of Fannie Mae.

63.     After FHFA placed Fannie Mae into conservatorship, FHFA has engaged in continuous supervision over its servicers, including Wells Fargo. See FHFA Office of Inspector General, FHFA's Supervision of Freddie Mac's Control's over Mortgage Servicing Contractors, March 7, 2012, available at http://fhfaoig.gov/Content/Files/AUD%202012-001_0.pdf  . FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Fannie Mae's] overall business profile, including any trends or associated emerging risks."

64.     Among other supervisory actions, in April, 2011, FHFA created the Servicer Alignment Initiative, as amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which the FHFA directs the actions taken by Fannie Mae's mortgage servicers when servicing a delinquent mortgage loan, in order to maximize the financial benefits to Fannie Mae, and ultimately to the taxpayers.

65.     Through the SAI, the FHFA directed Fannie Mae to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages.

66.     Through the SAI, the FHFA created specific requirements for servicers to follow including state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale.

67.     Through the SAI, the FHFA has directed Fannie Mae's servicers to use non-judicial foreclosure procedures, which authorize the seizure of property without a pre-deprivation hearing as required by the Due Process Clause of the Fifth Amendment.

68.     Nationstar  had referred the Plaintiff's Mortgage account to Brock .C. to exercise the statutory power of sale and foreclose on the Plaintiff's home.

69.     Neither Nationstar, Fannie Mae, nor FHFA have provided the Plaintiff an opportunity for an evidentiary hearing with Fannie Mae or FHFA at which the Plaintiff could have an opportunity to: confront and cross-examine persons who supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of  Nationstar, Fannie Mae, and FHFA prior to the termination of her interest in the Property; be represented by counsel during a hearing prior to the termination of her  interest in the Property; and to have a neutral hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

70.     Had the Plaintiff had an opportunity for a hearing, he could have presented evidence to challenge the foreclosure in one or more of the following ways:

a.     Fannie Mae did not comply with the terms of the mortgage and did not mail her a default notice pursuant to the terms of the mortgage.
b.     A Notice of Foreclosure Counseling  by Fannie Mae was not provided to the Plaintiff.
c.     A Notice of Mediation by Fannie Mae was not mailed to the Plaintiff

## COUNT I – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

71.     Plaintiff realleges and incorporates paragraphs 1-70 by reference.

72.     Fannie Mae, and FHFA acted jointly to seek to deprive the Plaintiff of

her ownership rights in the Property by seeking conducting a foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27, entitled "Mortgage Foreclosure and Sale," which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before the foreclosure sale.

73.    When used by a federal government actor, the procedures of Rhode Island General Laws Chapter 34-27 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of his or her property. Specifically, Chapter 34-27 does not provide for adequate notice, an opportunity to be heard before the deprivation of his property, or the opportunity to recover appropriate damages for an improper deprivation of property.

74.    Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Fannie Mae and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to Plaintiff than is provided by Rhode Island General Laws chapter 34-27 before depriving the Plaintiff of her property.

75.    The Plaintiff has a significant property interest at stake. The foreclosure, if allowed to stand, permanently deprives the Plaintiff of her ownership, possession, and use of the Property, which she uses as her primary residence; clouds the title to the Property; impairs her ability to sell, rent, or otherwise alienate the Property;  reduces the chance of her obtaining a future loan or mortgage; subjected her to  eviction; and jeopardizes her security in a dwelling place.

76.    There is a significant risk of an erroneous deprivation of the Plaintiff's interest through the procedures used by Fannie Mae, and FHFA pursuant to RI General Law's chapter 34-27. To prevent an erroneous deprivation of property, the Due Process Clause of the Fifth Amendment to the United States Constitution requires Fannie Mae, and FHFA to provide Plaintiff with an opportunity to be heard at a meaningful time on, *inter alia,* any challenge to the true ownership of the Note; any challenge to Fannie Mae's and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Fannie Mae's and/or FHFA's determination of default under the Note and Fannie Mae's and/or FHFA's calculation of deficiency; to challenge Fannie Mae's and/or FHFA's determination that the Plaintiff is not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Fannie Mae and/or FHFA acted in good faith;

and any challenge to Fannie Mae's and/or FHFA's compliance with applicable notice procedures.

77.     The government's financial interest in obtaining ownership, possession, and use of the Property is minimal.

78.     There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

79.     Fannie Mae and FHFA violated the Plaintiff's Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

Wherefore Plaintiff demands the following relief:

A. A declaration that the Fannie Mae's and FHFA's use of non-judicial foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any foreclosure process that does not provide for adequate notice, a meaningful evidentiary hearing prior to the deprivation of property, and an opportunity to recover damages, violated the Plaintiff's due process rights under the Fifth Amendment to the Constitution of the United States;

B. A declaration that the any attempt foreclosure sale of the Plaintiff's Property on January 30, 2019 be invalid and void;

C. Costs and attorney fees.

D.  Such other and further relief as the court considers appropriate.

DANIELLE LEMA
By her Attorney

January 28, 2019                    /s/ John B. Ennis
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com

## COUNT II

### BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND DEALING

80.    Paragraphs 1-79 are incorporated by reference.

81.    Prior to sending the Plaintiff any Notice of Sale, pursuant to R.I.G.L. 34-27-3.1, the mortgagee or a loan servicer acting on its behalf was required to mail the Plaintiff a Notice of Default and the Mortgagee's Right to Foreclose at least 45 days before mailing a Notice of Sale.

82.    Neither FHFA, Fannie Mae nor Nationstar acting on behalf of Fannie Mae mailed the Plaintiff a Notice of Default and the Mortgagee's Right to Foreclose  pursuant to R.I.G.L 34-27-3.1 in conjunction with the mailing of  the Notice of Sale on December 7, 2018.

83.    R.I.G.L 34-27-3.1,  provides:

**§ 34-27-3.1. Foreclosure counseling.**

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

84.     The failure to provide the Notice of Default and the Mortgagee's Right to Foreclose at least 45 days before the  Notice of Sale renders any attempted nonjudicial sale void pursuant to R.I.G.L. 34-27-3.1.

85.     Neither  Fannie Mae, FHFA nor  Nationstar  mailed the Plaintiff a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

86.     Before an acceleration of the loan was declared, the Lender or its assignee was required to send Plaintiff a notice to her home address which specified:

        a.      the default;

        b.      the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

        c.      that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

d.      the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

87.     Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

88.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.  There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff

was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

89.    Nationstar,without stating that it was mailing the letter on behalf of Fannie Mae claims to have mailed Plaintiff  Danielle Lema a letter dated April 10, 2018 which it claimed to be a default notice.  This letter was mailed to her attorney's office and not to her.

90.    The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to exercise the statutory power of sale.

91.    The statutory power of sale could only be exercised pursuant to the Plaintiff being sent a default letter pursuant to the terms of the mortgage, followed by an acceleration letter, a Notice of Mediation pursuant to R.I.G.L 34-27-3.2 And  a Notice of Foreclosure Counseling pursuant to  R.I.G.L. 34-27-3.1 at least forty five days before a Notice of Sale pursuant to R.I.G.L.34-27-4.

92.    Plaintiff did not receive a Notice of Mediation from Nationstar.

93.    Plaintiff was not mailed a Notice of Mediation by Fannie Mae.

94.    Due to the failure to comply with the terms of the mortgage and the statutory scheme, Fannie Mae  was not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time.

95.    The actions of the Defendants constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

96.    Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for this attempt to foreclose.    She has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of her home .

97.    The conduct of the Defendants in not complying with the terms of the mortgage and the provisions of R.I.G.L 34-27-3.1, R.I.G.L. 34-27-3.2  were willful,  wanton and reckless, warranting the imposition of punitive damages.

98.     She has incurred legal fees for the defense of this improper foreclosure and for the prosecution of this action.

WHEREFORE, Plaintiff demands the following relief:

a.     Damages against Fannie Mae for failure to comply with the terms of the mortgage.

b.     Damages against Fannie Mae legal fees and actual damages arising from the breach of contract and for failure to comply with R.I.G.L. 34-27-1 and R.I.G.L 34-27-3.2.

c.     Damages against Fannie Mae for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the purported foreclosure attempt.

d.     Legal fees from  Fannie Mae   pursuant to the provisions of  R.I.G.L § 9-1-45.

e.     Punitive damages against Fannie Mae.

f.     All other just and proper relief.

                          DANIELLE LEMA
                          By her Attorney

January 28, 2019          /s/ John B. Ennis                              
                          JOHN B. ENNIS, ESQ. #2135
                          1200 Reservoir Avenue
                          Cranston, Rhode Island 02920
                          (401) 943-9230
                          Jbelaw75@gmail.com

## COUNT III

## CLAIM FOR INJUNCTIVE  RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

**100.** Paragraphs 1-99  are incorporated by reference.

101.    Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the terms of the mortgage is not voided and  Defendant, Fannie Mae is allowed to obtain title to Plaintiff's home.

102.    The failure of Fannie Mae to comply with the terms of the provisions of R.I.G.L 34-27-3.1, R.I.G.L 34-27-3.2 and the terms of the mortgage will render void any attempted foreclosure by Statutory Power of Sale, without having the statutory power to do so and is a violation of due process of law.

103.    Plaintiff lives in this property, as her sole residence with hew two children.

104.    These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant.

105. Such relief sought by Plaintiff will not disserve the public interest if imposed.

106. Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the terms of the mortgage and the provisions of R.I.G.L 34-27-3.1, R.I.G.L 34-27-3.2 and due to the denial of due process.

WHEREFORE, Plaintiff demands that this Court:

a.      Declare that all actions of Fannie Mae and FHFA in attempting to exercise the statutory power of sale and foreclose on the Plaintiff's property are void.

b.      Grant a Preliminary Injunction Restraining and Enjoining  Fannie Mae and FHFA and any other entity acting on their behalf from seeking to exercise the statutory power of sale.

c.      Grant a Mandatory Injunction ordering Fannie Mae and FHFA not to seek to exercise the statutory power of sale.

d.      Grant all other just and proper relief.

e.      Award Plaintiff attorney fees for the prosecution of this action.


                                    DANIELLE LEMA
                                    By her Attorney


January 28, 2019                    /s/ John B. Ennis_____
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com


## COUNT IV
## VIOLATION OF R.I.G.L 19-14.11-4

107.   The allegations of paragraphs 1-106 are incorporated by reference.

108.   Nationstar is a third party loan servicer subject to the provisions of R.I.G.L. 19-14.11-4.

109.   This statute prohibits third party loan servicers from certain actions. This statute prohibits the following actions:

## § 19-14.11-4. Prohibited acts and practices.

It is a violation of this chapter for a person to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person.

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

(4) Use any unfair or unconscionable means in servicing a loan.

(5) Knowingly misapply or recklessly apply loan payments to the outstanding balance of a loan.

(6) Knowingly misapply or recklessly apply payments to escrow accounts.

(7) Require the unnecessary forced placement of insurance when adequate insurance is currently in place.

(8) Fail to provide loan payoff information within the time period set forth in chapter 19.

(9) Charge excessive or unreasonable fees to provide loan payoff information.

(10) Fail to manage and maintain escrow accounts in accordance with § 19-9-2.

(11) Knowingly or recklessly provide inaccurate information to a credit bureau, thereby harming a consumer's credit worthiness.

(12) Fail to report both the favorable and unfavorable payment history of the consumer to a nationally recognized consumer credit bureau at least annually if the servicer regularly reports information to a credit bureau.

(13) Collect private mortgage insurance beyond the date for which private mortgage insurance is required.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

(15) Knowingly or recklessly facilitate the illegal repossession of chattel collateral.

(16) Fail to respond to consumer complaints in a timely manner.

(17) Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license as required under this chapter.

(18) Fail to comply with any federal or state law, rule, or other legally binding authority relating to the evaluation of loans for modification purposes or the modification of loans.

(19) Fail to comply with this chapter, or rules adopted under this chapter, or fail to comply with any orders or directives from the director, or fail to comply with any other state or federal law, including the regulations thereunder, applicable to any business authorized or conducted under this chapter.

109.    By its attempted exercise of the statutory power of sale as alleged, Nationstar has violated the following provisions of this statute:

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

(4) Use any unfair or unconscionable means in servicing a loan.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

110.    The conduct of Nationstar violates the provisions of this statute and are deemed by the State of Rhode Island to be illegal acts, which are prohibited the State of Rhode Island.

111.    These actions are unfair and deceptive and prohibited by law.

Wherefore Plaintiff demands judgment for actual damages, punitive damages and legal fees for the actions of Nationstar which violated the provisions of R.I.G.L 19-14.11-4 and to grant all other just and proper relief.

DANIELLE LEMA
By her Attorney

January 28, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 AGAINST NATIONSTAR

112.   Paragraphs 1-111are incorporated by reference.

113.   Nationstar  is a debt collector as defined by 15 USC 1692 et seq. since September     2017  has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

114.   The primary business of Nationstar is the collection of debts.

115    On July 3, 2012, when Nationstar commenced servicing Plaintiff's mortgage loan account, Plaintiff was delinquent on her mortgage and according to the records of Nationstar was due for the November 11, 2011 payment.

116.   Nationstar  has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

117.   Nationstar, through its attorney,   has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff  of her property  even though Nationstar and Fannie Mae had  no present right to possession of the property claimed as collateral through an enforceable security interest.

118. It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated December 7 2018 that a Mortgage Foreclosure sale of the Plaintiff's property would occur on January 30, 2019 at 12:00 PM.

119. The threat to conduct a Mortgage Foreclosure Sale on January 30, 2019 was a deceptive action on the part of Nationstar due to the failure to provide a Notice of Foreclosure counseling, a Notice of Mediation or a default notice pursuant to the terms of the mortgage and due to the fact that Fannie Mae as a governmental actor was required to foreclose judicially and not by the statutory power of sale.

120. Each of these actions of Nationstar was a violation of 15 U.S.C. 1692e(5).

121. The facts alleged in this complaint establish that Fannie Mae did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

122. As alleged above, Nationstar violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

123. Nationstar also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt.

124. Nationstar made false representations regarding the character and legal status of the debt, namely that the loan had been accelerated and that Fannie Mae could exercise the statutory power of sale.

125. All the actions of Nationstar, alleged in this complaint, were designed to compel the Plaintiff to pay monies to Nationstar on behalf of Fannie Mae, individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of her home unless she made such a payment to Nationstar, through its attorney on behalf of the entity, which claimed to own the note.

126. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

127.    15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

128.    Nationstar violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

129.    Nationstar  violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

130.    Nationstar conduct  has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose her home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

131.    Nationstar's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

132.    The Plaintiff  has incurred  actual damages as a result of the violations of the FDCPA:

> a.    Plaintiff has incurred costs for gasoline to visit her attorney on at least two occasions driving to her  attorney's office for two round trips totaling more than 13.4 miles. The IRS standard mileage allowance provides for .56 per mile.

> b.    Plaintiff  has used her cell phone to call and receive calls from her attorney. These calls are charged to her pursuant to her cell phone usage and monthly fees.

> c.    Plaintiff  has used electricity to recharge her cell phone for calls when she spoke with her attorney regarding this foreclosure.

> d.    She has incurred attorney fees and costs to respond to these false communications.

> e.    She  has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of her home.

f.      She has incurred legal fees to communicate with Nationstar's attorney to cancel this improper attempted sale.

g.      Her mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs.  These fees include the following inaccurate fees:

Legal fees of $2212.00
Property inspection fees of $105.00.
Charges for property maintenance of $225.00 which were not incurred.

133.   The property inspection charges on this statement were neither reasonable nor necessary as the servicer was aware that the consumer's property was occupied and it is unreasonable for to charge monthly property inspection fees.

134.   The purpose of property inspection fees is to safeguard the property and a computer generated automatic ordering or property inspection fees is not a valid fee charged to the mortgage loan account.

135.   The charges for property inspection fees was not actually paid to the vendor.

136.   Some of these legal fees were charged while the Plaintiff was in bankruptcy without any Court approval.

137.   These legal fees were neither reasonable not necessary, nor authorized by the terms of the mortgage, nor actually paid by Nationstar.

138.   As a result of the above described acts of Nationstar it  is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

139.   Plaintiff has incurred legal fees in this action.

WHEREFORE, Plaintiff demands that Judgment be entered against

Nationstar for the following relief:

A.     Judgment against Nationstar for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B.     Legal fees for the prosecution of this action.

C.     For all other just and proper relief.

DANIELLE LEMA
By her Attorney

January 28, 2019                          /s/ John B. Ennis
                                          JOHN B. ENNIS, ESQ. #2135
                                          1200 Reservoir Avenue
                                          Cranston, Rhode Island 02920
                                          (401) 943-9230
                                          Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury on all Claims Triable by a Jury