UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

DANIELLE LEMA

VS                                                              CA NO.19-cv-36JJM

NATIONSTAR MORTGAGE LLC

FIRST AMENDED COMPLAINT

VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692, AGAINST NATIONSTAR MORTGAGE LLC

1. Plaintiff, Danielle Lema ("Lema") is a resident of the State of Rhode Island.

2. On January 28, 2019, when this case was filed, Lema was the owner of real property located at 15 Ninth Street, East Providence, Rhode Island

3. The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq*.

4. FHFA was the conservator for Federal National Mortgage Association ("Fannie Mae") which is a corporation organized under the laws of the United States by Special Charter.

5. Defendant, Nationstar Mortgage, LLC ("Nationstar") is a Delaware limited liability company engaged in the business of collecting debts in this state

with its principal place of business located a 8950 Cypress Waters Boulevard, Dallas, Texas, 75019.

6. The principal business purpose of Nationstar is the collection of debts using the mails and telephone.

7. Nationstar regularly attempts to collects debts alleged to be due other persons, such as Fannie Mae and other mortgagees.

8. Nationstar is a debt collector and was a loan servicer for Plaintiff's mortgage loan.

9. Nationstar does business under the fictitious name of Mr. Cooper.

10. The principal business purpose of Nationstar is not the enforcement of security interests.

11. Nationstar at all the times referenced in this complaint and previously, as a loan servicer, collected mortgage payments from mortgagors, paid taxes from escrow proceeds to municipal tax collectors and paid property insurance payments due to insurance companies from escrow which it maintained for mortgagors.

12. Nationstar, as part of its loan servicing business, determined the amount of escrow needed for this mortgage loan account.

13. Nationstar, as part of its loan servicing business, provides loss mitigation for homeowners and the owners of mortgage notes, taking and evaluating loan modifications.

14. Nationstar, as part of its loan servicing business, ordered through its electronic system of record property inspections for properties such as that of the Plaintiff.

15. At the time that Nationstar commenced servicing Plaintiff's mortgage, she was in default and Nationstar treated her loan as if it were in default.

16. On or about September 28, 2005, Lema borrowed $261, 800.00 from American Brokers Conduit ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date, a copy of which is attached as Exhibit 1.

17. On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc.("MERS")  as nominee for American Brokers Conduit, attached as Exhibit 2.

18. The Mortgage was recorded on September 28, 2005, in the Land Evidence Records of the City of East Providence in Book 2545 at Page 243.

19. On February 27, 2009, MERS executed an assignment of mortgage which conveyed the mortgage to Fannie Mae.

20. On November 3, 2016, Fannie Mae executed an assignment of mortgage, which conveyed the mortgage to Nationstar.

21. On September 18, 2018 Nationstar executed an assignment of mortgage, which conveyed the mortgage to Fannie Mae.

22. On September 12, 2017, Plaintiff executed a loan Modification Agreement, whereby her loan was modified by Fannie Mae, through its loan servicer, Nationstar.

23. This loan modification was effective September 1, 2017 and the first payment due on the modified mortgage was October 1, 2017.

24. This loan modification, which had a term of 40 years, deferred all past due interest arrearages and all past due escrow, fees and expenses to September 1, 2057.

25. All legal fees which had been incurred prior to the loan modification were included in the past escrow, fees and expenses, which were not due until September 1, 2057.

26. Thus when the loan was modified, Plaintiff was not in arrears as of September 1, 2017 and owed no legal fees or any other past due fees or expenses.

27. This modification was boarded and electronically loaded on the electronic system of record of Nationstar on September 27, 2017.

28.     Plaintiff made the first two payments of $1941.84 for principal, interest and escrow for October and November, 2017.

29.     The monthly payment for principal and interest for the modified loan was $1101.40.

30.     Due to financial difficulties Lema fell behind on her mortgage at the end of 2017..

31.     On or about April 10, 2018, Nationstar transmitted electronic data regarding Lema's mortgage loan and a template to its mail and print vendor, The Walz Group ("Walz") of Temecula, California.

32.     Walz was at the time and still is a mail and print vendor for Nationstar, which deposits into the mail letters and statements, notices and other documents documents to Nationstar's millions of mortgage customers.

33.     Walz received the data and template from Nationstar and created a default letter, which was dated April 10, 2018.

34.     This letter, attached to the original complaint was not mailed by Nationstar, but by Walz.

35. This letter was mailed to Danielle Lema, c/o John B. Ennis, 1200 Reservoir Avenue, Cranston, RI 02920. A copy was attached to the original complaint as Exhibit C.

36. Lema never designated 1200 Reservoir Avenue, Cranston, RI 02920 as her designated address for mail pursuant to Paragraph 15 of the mortgage.

36. However this letter was never deposited into the mail by first class mail to Danielle Lema at her correct mailing address of 15 Ninth Street, East Providence Rhode Island 02914.

37. Walz did mail a certified letter to 15 9th Street, East Providence, RI 02914, which was never picked up by Lema.

38. Pursuant to the mortgage, the notice had to be sent to Danielle Lema, 15 Ninth Street, East Providence, RI 02914 by first class mail in order for it have been deemed given to her upon mailing.

39. Paragraph 15 of the mortgage indicates that any mail sent by means other than first class mail, requires actual delivery to the borrower, such as Lema.

40. Lema never received the April 10, 2018 letter, which was attached to the original complaint as Exhibit C.

41. Walz never mailed this letter by regular mail solely to Danielle Lema, 15 Ninth Street, East Providence, RI 02914, who never received this letter.

42. This letter also did not strictly comply not compliant with paragraph 19 or 22 of the mortgage or Paragraph 7 or 11 of the note.

43. On April 10, 2018, the records of Nationstar indicate that the Plaintiff was in arrears for the five months of principal and interest from December 1, 2017 through April 1, 2018 which was $5507.00.

44. The escrow for these five months totaled $4,202.20.

45. The total amount of principal, interest and escrow for these five months was $9,709.20.

46. As a result on April 10, 2018 Plaintiff was not in arrears in the amount of $10, 962.26 for principal and interest or for principal, interest and escrow.

47. The terms of the promissory note were incorporated into the terms of the mortgage, when these two documents were executed by the Plaintiff on September 29, 2005.

48. The terms of the note did not permit the lender to declare an amount in default other than the amount due for principal and interest.

49. The purported default notice deceptively and erroneously included fees and expenses which were not permitted by paragraph 7 of the promissory note or paragraph 19 of the mortgage.

50. The purported default notice also deceptively advised the Plaintiff that she had to pay payments due, advances and any other expenses after the date of the letter in order to cure the default.

51. This letter also deceptively advised her that "All reinstatement payments must be made in certified funds" as to the cure amount.

52. However reinstatement occurs only when the mortgage loan has been accelerated and is not applicable as to default letters.

53. The letter deceptively confused the Plaintiff by referencing obligations which only had to be paid in the event that the mortgage note was accelerated.

54. Paragraph 19 of the mortgage indicated the exact conditions following acceleration, which a borrower had to satisfy in order to reinstate the mortgage loan after acceleration:

(1) pay the lender all sums due under the mortgage and the note as if no acceleration had occurred;

(2) cure any default of any other covenants or agreements;

(3) pay all expenses incurred in enforcing the mortgage—such as reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for purposes of protecting the lender's interest in the property; and

(4) take such action as reasonably required by the lender to assure that the lender's interest in the property and rights under the security instrument, and the borrower's obligation to pay the sums secured by the security instrument, will continue unchanged.

55. These fees and expenses were the type of expenses which Nationstar deceptively included in the purported default notice.

56. Nationstar deceptively stated in this letter that Lema could reinstate the loan after acceleration, and provided certain addresses to mail the payments, without advising her that this right to reinstate would end five days before the sale date.

57. The terms of the mortgage provided that Lema had to be informed that she had the unconditional right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

59. However Nationstar limited this right in the letter by stating that a borrower could only bring a court action after acceleration of the mortgage note.

60. Nationstar also deceptively stated that failure to cure the default may result in foreclosure proceedings, not the statutory power of sale.

61. Contrary to the terms of the mortgage and the note, the note was not accelerated, despite the fact that Paragraph 11 of the note specifically provides:

> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

62. Nationstar did not provide a Notice of Acceleration to the Plaintiff and thus did not strictly comply with the terms of the note as incorporated into the terms of the mortgage.

63. The mortgage and the note was drafted by American Brokers Conduit, the originator of the mortgage loan, with no input from the Plaintiff as to its terms.

64. Any ambiguities regarding any obligations and rights under the terms of the mortgage thus must be strictly construed against the drafter and its successors and assigns.

65. The reasonable expectation of the Plaintiff in relation to the mortgage and note was that she was entitled to a default letter pursuant to the terms of the mortgage and the note, which would declare a certain amount in default and that she be provided at least thirty days to cure this specific amount.

66. The additional deceptive language, which created the obligation to pay additional amounts determined by Nationstar in its letter did not comply with the terms of the mortgage at all and certainly did not strictly comply with the terms of the mortgage or the note.

67. Nationstar's inclusion of deceptive terms not permitted by the terms of the mortgage and the note in a default letter rendered this letter invalid.

68. As a result Nationstar, on behalf of Fannie Mae, was not authorized to accelerate the mortgage note and was not authorized to exercise the statutory power of sale.

69. The specific demand in the letter mailed by Nationstar for $10.962.26 plus any payments, charges or expenses afterward was an inaccurate amount, which did not accurately reflect the amount actually due pursuant to the terms of the mortgage and the note and violated the FDCPA by mischaracterizing the nature of the obligation, namely the amount past due.

70. This amount, claimed to be the arrearage, included multiple unreasonable and unnecessary charges, including legal fees of $1281.00 which were incurred before the loan modification and should not have been charged to the mortgage loan account.

71. Since the amount of the alleged arrearage was not accurate, the transmittal of an inaccurate amount to cure did not strictly comply with the terms of the mortgage and the note.

72. The mortgage and the note clearly state that the borrower must be provided the amount of the default.

73. The Plaintiff was entitled pursuant to the terms of the mortgage to be provided the exact amount of the arrearage and to be given thirty days to cure the amount of the exact arrearage.

74. In order to exercise the statutory power of sale, the lender or its assignee were contractually required to provide the Plaintiff and accurate amount of the default and then wait thirty days after first class mail or delivery of this accurate amount, as required by the mortgage and note, before mailing a Notice of Acceleration and providing the Plaintiff an additional thirty days to reinstate.

75. The deceptive nature of this letter by not advising the Plaintiff of the limitations on the right to reinstate did not strictly comply with the terms of the mortgage and as a result was defective, which precluded the exercise of the statutory power of sale.

76. The terms of the mortgage authorized the exercise of the statutory power of sale, which could only be exercised by the mortgagee, which sought to

foreclose sending the consumer a Notice of Sale, pursuant to the provisions of R.I.G.L. §§§ 34-27-4 .

77. The provisions of R.I.G.L 34-27-3.2 state that before a mortgagee can foreclose on property by the exercise of the statutory power of sale or by other means, the consumer who resides in the property as her residence, must be provided a Notice of Mediation from the mortgagor, which is seeking to foreclose.

78. Lema was never provided a Notice of Mediation due to it being mailed by certified mail instead of regular mail.

79. The provisions of R.I.G.L 34-27-3.2 state that before a mortgagee can foreclose on property by the exercise of the statutory power of sale or by other means, the mortgagor must be provided a Notice of Foreclosure Counseling from the mortgagee.

78. Lema was never provided a Foreclosure Counseling due to it being mailed by certified mail instead of regular mail.

79. Nationstar hired Brock & Scott, PLLC ("Brock") in November, 2018 to seek to collect on the Plaintiff's note on behalf of Nationstar.

80. Nationstar, through its agent Brock, by letter dated December 7, 2018, threatened to conduct a foreclosure sale for Plaintiff's home on January 30, 2019 at 12 :00 PM. A copy of the letter is attached as Exhibit 3.

81. Due to the failure to comply with the terms of the mortgage and the note, by not accelerating the note and by not complying with the statutory provisions, Nationstar by causing the letter to be mailed scheduling a sale of Lema's home, violated 15 U.S.C. §1692e(5) by using false, deceptive or misleading representations or means in connection with the collection of any debt.

82. The facts alleged in this complaint establish that Nationstar deceptively threatened to schedule a foreclosure sale of Plaintiff's home and violated 15 U.S.C.§1692e(5) by making a threat to take an action that could not be legally taken.

83. Nationstar by its December 7, 2018 letter, sent by its attorney and agent, Brock threatened to take nonjudicial action to effect dispossession or disablement of Plaintiff's property in violation of even though Fannie Mae, had no right to possession of the property claimed as collateral through an enforceable security interest. Specifically in this letter Nationstar, through its agent, threatened to sell the home of the Plaintiff on January 30, 2019.

84. This letter thus constituted a violation of 15 U.S.C. §1692f(6).

85. These deceptive actions of Nationstar have occurred within one year of the filing of this complaint.

86. All the actions of Nationstar, alleged in this complaint, were designed to compel the Plaintiff to pay monies to Nationstar on behalf of Fannie Mae, individually and through its attorney, on behalf of the owner of the note and mortgage under the false threat of foreclosure of her home unless she made such a payment to Nationstar, through its attorney on behalf of the entity, which claimed to own the note.

87. Any claims in this Amended Complaint relate back to this entity of the original complaint. The allegations made in the original complaint put the defendant on notice that these allegations were FDCPA violations. The facts alleged in the original complaint put the Defendant on notice that its conduct in regard to these claims constituted violations of the FDCPA.

88. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

89. Nationstar violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

90. Nationstar's conduct has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose her home which has resulted in loss

of sleep, anxiety, depression, and embarrassment.

91. She was fearful about the housing for her and her children if the foreclosure sale went forward on January 30, 2019.

92. Due to Nationstar's conduct, Plaintiff was fearful that she would lose her home at a foreclosure sale.

93. As a result of this improper sale being scheduled, in violation of the FDCPA, she incurred the cost of driving twice to her attorney's office to provide information to her attorney before the case was filed, to discuss the affidavit which she needed to sign and to actually sign the affidavit at her lawyer's office on January 27, 2019.

94. These two drives from her home to her attorney's office on January 26, 2019 and January 27, 2019 consisted of two round trips totaling more than 13.4 miles. The IRS standard mileage allowance provides for .56 per mile. Thus she incurred $7.50 in vehicle and fuel costs as a result of Nationstar's conduct.

95. Due to the conduct of Nationstar Plaintiff has used her cell phone to call and receive calls from her attorney, not after the case was filed, but before it was filed when she was frantic and concerned that she would be forfeclosed on January 29, 2019.

96. These calls were charged to her pursuant to her cell phone usage and monthly fees.

97. Plaintiff has used electricity to recharge her cell phone these calls when she spoke with her attorney regarding the possible foreclosure prior to the case being filed.

98. Due to the actions of Nationstar, she spent time away from her children to discuss this matter with her attorney before this case was filed.

98. She hired her attorney to communicate with Nationstar, through Brock by letter and phone calls and emails. She thus incurred attorney fees and costs to respond to these false communications prior to filing suit.

99. She was embarrassed and received phone calls from investors who called her when the sale of her home was advertised three times in the Providence Journal.

100. She became irritable and stressed out with her children after receiving the December 7, 2018 threat to sell her home.

101. She took time out from work and her schedule at home to speak with her attorneys before this case was filed to talk about the likelihood of success.

102. Due to the actions of Nationstar after receipt of the December 7, 2018 letter, she was unable to sleep, worrying about the foreclosure sale.

103 She has incurred legal fees to communicate with Nationstar's attorney to cancel this improper attempted sale.

104. As a result of the above described acts of Nationstar it is liable to the

Plaintiff for actual damages, statutory damages, attorney's fees and costs.

    105. Plaintiff has incurred legal fees in this action.

WHEREFORE, Plaintiff demands that Judgment be entered against Nationstar for the following relief:

A. Judgment against Nationstar for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B. Legal fees for the prosecution of this action.

C. For all other just and proper relief

DANIELLE LEMA

By her attorney,

/s/ John B. Ennis                                  July 29, 2020
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
 (401) 943-9230
Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury

Certificate of Service

I hereby certify that I served a copy of this Amended Complaint to Samuel Bodurtha, Jeffrey Ankrom and Krystle Tadesse and Joseph Farside on July 29, 2020 by electronic filing.

/s/ John B. Ennis