UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIELLE LEMA,<br><br>              Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>              Defendant. | C.A. No. 1:19-cv-00036-JJM-LDA |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") submits this memorandum of law in support of its Motion for Summary Judgment.  Nationstar did not violate the Fair Debt Collection Practices Act ("FDCPA") when it favorably modified Plaintiff Danielle Lema's ("Plaintiff" or "Ms. Lema") mortgage, notified her of her default that occurred two months later, scheduled a foreclosure sale of the subject property, and ultimately agreed to a short sale resulting in approximately $100,000.00 in debt forgiveness and $3,000.00 in cash to the Plaintiff. The FDCPA does not apply to the mortgage because Ms. Lema, having received a Chapter 7 bankruptcy discharge, is under no obligation to pay the mortgage.   Further, it was not an attempt to collect a debt when Nationstar sent a notice of non-judicial foreclosure sale because the notice did not contain any demand for payment or a threat to seek a deficiency judgment.  Finally, sending the notice was neither "deceptive" nor "unconscionable" conduct in violation of the FDCPA, 15 U.S.C. §§ 1692e, 1692f, particularly in light of the totality of the circumstances.   Therefore, judgment should enter in Nationstar's favor on the sole count of Plaintiff's Amended Complaint.

I.      **FACTS**

A.      **The Note and Mortgage.**

On September 28, 2005, Plaintiff executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for American Brokers Conduit ("Lender") to secure a promissory note ("Note") in the original principal amount of $261,800.00 against property located at 15 Ninth Street, East Providence, Rhode Island 02914 (the "Property"). Statement of Undisputed Material Facts ("Facts") at ¶ 1.

In paragraph 9 of the Mortgage, Ms. Lema expressly agreed to pay on demand whatever reasonable or appropriate charges, including attorneys' fees, that the Lender pays if Ms. Lema filed a proceeding in bankruptcy court.  Specifically, paragraph 9 states, "**Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument**."  **Exhibit A-2** at ¶ 9 (emphasis added).

Paragraph 15 of the Mortgage states that notices are deemed given to the Borrower, Ms. Lema, "when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means."  **Exhibit A-2** at ¶ 15.  Paragraph 15 also states, "The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender."  *Id.*

Following default, Paragraph 22 of the Mortgage requires the Lender to give notice that "shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property."  **Exhibit A-2** at ¶ 22.  Paragraph 22 also requires the notice to "inform Borrower of the right to reinstate after acceleration

and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." *Id.* Paragraph 22 further states, "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument **without further demand**." *Id.* (emphasis added).

On or about February 27, 2009, MERS assigned the Mortgage to Federal National Mortgage Association ("Fannie Mae") by an assignment ("2009 Assignment"). Facts at ¶ 5. On or about November 3, 2016, Fannie Mae assigned the Mortgage to Nationstar by an assignment ("2016 Assignment"). Facts at ¶ 7. On September 18, 2018, Nationstar assigned the Mortgage to Fannie Mae by an assignment ("2018 Assignment"). Facts at ¶ 9.

**B.      Plaintiff's First Default on the Mortgage and Communications with Counsel.**

Plaintiff first defaulted on the Mortgage on November 1, 2011. Facts at ¶ 11. Nationstar became the servicer of the Mortgage on or about July 3, 2012. Facts at ¶ 12.

In response to a February 25, 2013 letter from Attorney John Ennis, Nationstar, on March 13, 2013, changed the address in its system for written communications to Plaintiff to be sent to her attorney at 1200 Reservoir Avenue, Cranston, RI 02920 as required by the FDCPA, 15 U.S.C. § 1692c(a)(2). Facts at ¶¶ 13-14.

**C.      Plaintiff's Bankruptcy Case and the 2017 Modification.**

On December 12, 2016, Ms. Lema filed a voluntary petition under chapter 13 of the Bankruptcy Code. Facts at ¶ 15 (citing *In re Danielle Lema*, Case No. 16-bk-12128 (Bankr. D.R.I. Dec. 12, 2016) ("*In re Lema*")).

On August 30, 2017, Nationstar and Ms. Lema entered into a modification of the Mortgage ("2017 Modification"). Facts at ¶¶ 18-19; **Exhibit A-6**. The 2017 Modification set a new principal

balance of $347,100.79, with $93,100.79 of that amount deferred without interest.  **Exhibit A-6**. The interest on the new principal balance was modified to 4.250% and the maturity date was extended to September 1, 2057.  **Exhibit A-6**.  The 2017 Modification required that Ms. Lema agree to comply with all terms of the original Mortgage, including the requirement to make payments for fees, escrow items, or other items besides principal and interest.  **Exhibit A-6** at ¶ 5. Ms. Lema also expressly agreed that the 2017 Modification did not waive any rights under the Note or Mortgage.  **Exhibit A-6** at ¶ 6(b).  The 2017 Modification also emphasized that Nationstar was not waiving any right to seek reimbursement of fees, expenses, or otherwise.  **Exhibit A-6** at ¶ 6(c) ("Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.").

The 2017 Modification required Plaintiff to make monthly payments commencing October 1, 2017.  Facts at ¶ 20.  Two months later, Plaintiff again defaulted on the Note and Mortgage by failing to make the payment due December 1, 2017, and all subsequent payments.  Facts at ¶ 21.

### D.    Post-Modification Charges.

After the effective date of the 2017 Modification, Nationstar incurred legal charges due to Plaintiff's bankruptcy.  Facts at ¶ 22.  On October 27, 2017, Nationstar paid $250.00 for attorneys' fees for a Motion to Approve Loan Modification required by the Bankruptcy Court.  Facts at ¶ 23. On December 22, 2017, Nationstar charged $850.00 for attorneys' fees and $181.00 for filing fees for a Motion for Relief from Stay that was filed on March 17, 2017.  Facts at ¶¶ 16, 24.  On April 4, 2018, Nationstar received a credit or partial payment of $27.94 which it placed into a suspense account.  Facts at ¶ 25.

E.    **Plaintiff's Chapter 7 Bankruptcy Discharge**.

On March 12, 2018, Plaintiff converted her Chapter 13 bankruptcy case, *In re Lema*, to a case under Chapter 7.  Facts at ¶ 27 (citing *In re Lema* at ECF No. 85).  On June 14, 2018, the Bankruptcy Court issued a discharge under Chapter 7.  *Id.* at ¶ 28 (citing *In re Lema* at ECF No. 106).

F.    **The Default of the Modified Mortgage**.

On April 10, 2018, as a result of Plaintiff's default on the *Mortgage*, Nationstar sent to Plaintiff four copies of a notice of default ("Notice of Default") by first class mail and certified mail to both her attorney's address and to the Property address.  Facts at ¶ 29; **Exhibit A-7**. Following its usual procedure, Nationstar sent the four copies of the Notices of Default to a vendor formerly known as The Walz Group ("Walz"), who mailed the documents by both regular first class and certified mail.  Facts at ¶ 34.  After mailing, Walz confirmed to Nationstar that the documents were mailed which is reflected in four entries in Nationstar's customer account history. Facts at ¶ 35.  The four copies of the Notices of Default that were mailed to Plaintiff by first class and certified mail are found in Nationstar's business records, which evidences that the four copies were mailed in the manner and to the addresses indicated on each copy.  Facts ¶ 36; **Exhibit A-7**.

The Notice of Default informed the Plaintiff that the Mortgage was in default for failure to make the payment due December 1, 2017 and all subsequent payments.  **Exhibit A-7**.  It also informed the Plaintiff that "$10,962.26 must be paid by 05/15/2018 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default."  *Id.*  The amount of $10,962.26 included the five past due payments of $1,941.84 ($9,709.20), plus the legal fees described above of $1,281.00, minus the amount of $27.94 held in suspense.  Facts at ¶ 32.  The Notice of Default further advised that failure to pay the $10,962.26

5

by May 15, 2018, "may result in acceleration of the sums secured by the Security Instrument,

foreclosure proceedings and sale of the property."  **Exhibit A-7**.  It further provided:

> In the event of acceleration, you have the right to reinstate the loan
> after acceleration and the right to bring a court action to assert the
> non-existence of a default or any other defense to acceleration and
> sale.

*Id.*

On May 24, 2018, Nationstar sent a *Notice of Mediation Conference Pursuant to R.I. Gen.*

*Laws § 34-27-3.2* (the "3.2 Notice") to Plaintiff by first class mail and by certified mail to both her

attorney's address and to the Property address.  Facts at ¶ 37.  Nationstar's vendor Walz confirmed

the mailing of the 3.2 Notice with Nationstar.  Facts at ¶38. On June 17, 2018, the United States

Postal Service returned the 3.2 Notice that Nationstar sent to Plaintiff by certified mail to the

Property because Plaintiff had refused to accept the certified mail.  Facts at ¶ 39.  On August 21,

2018, Nationstar, through its counsel at Shechtman Halperin Savage LLP, sent a *Notice of Default*

*and Mortgagee's Right to Foreclose and Notice of Availability of Mortgage Counseling Services*

pursuant to *R.I. Gen. Laws* § 34-27-3.1 (the "3.1 Notice") to Plaintiff by certified mail to her

attorney's address and to the Property address.  Facts at ¶ 40.  On December 7, 2018, Nationstar,

on behalf of Fannie Mae, through its counsel at Brock and Scott PLLC ("Brock"), sent a notice of

foreclosure sale of the Property, scheduling a sale for January 30, 2019, by regular first class and

certified mail to Plaintiff at **four separate addresses** – the Property address, an alternate address

of the Property, her attorney's office, and her former bankruptcy attorney's office.  Facts at ¶ 41.

### G.    Events Subsequent To The Filing Of This Action – Short Sale.

Plaintiff filed this action against Nationstar, Fannie Mae, and the Federal Housing Finance

Agency (Fannie Mae's conservator) ("FHFA") on January 28, 2019, seeking injunctive relief

93229004v.6

against the scheduled January 30, 2019, foreclosure sale.  Facts at ¶ 42.  After Plaintiff filed this action, Fannie Mae canceled the pending foreclosure sale.  Facts at ¶ 43.

On or about July 23, 2019, Nationstar approved Plaintiff for a short sale of the Property. Facts at ¶ 44.  On August 28, 2019, Plaintiff sold the Property to a third party, Darcelino M. Ramos, for $297,000.00 in a short sale.  Facts at ¶ 45.  Nationstar, on Fannie Mae's behalf, forgave $99,852.23 in amounts owed under the *Note* and *Mortgage* and approved Plaintiff to receive $3,000.00 in cash through the sale.  Facts at ¶¶ 46, 47.  On September 6, 2019, Fannie Mae, by Nationstar, its attorney-in-fact, executed and recorded a release of the *Mortgage*.  Facts at ¶ 48.

## H.      Allegations of the Amended Complaint.

Recognizing that the allegations of the original Complaint were mooted by the short sale, Plaintiff filed the Amended Complaint on July 29, 2020.  The Amended Complaint alleges that the Notice of Default failed to comply with paragraph 15 of the Mortgage because mailing by certified mail does not qualify as first class mail.  Am. Compl. at ¶¶ 35-37.  The Amended Complaint also alleges that Ms. Lema was not in arrears for the $10,962.26 stated on the Notice of Default, because allegedly a lender may only declare a default for failure to pay principal and interest, not the required payments for escrow or other fees allowed under the Mortgage.  *Id.* at ¶¶ 43-48.  Thus, the Amended Complaint alleges that the Notice of Default was deceptive by demanding fees and expenses, advising that Ms. Lema had to make payments and other expenses that became due after the date of the Notice of Default, referring to the amount required to cure the default as a "reinstatement payment[]," failing to advise Ms. Lema that the right to reinstate would end five days before the sale date, limiting the right to bring a court action to only after acceleration, and stating that failure to cure the default would result in foreclosure proceedings rather than the exercise of the statutory power of sale.  *Id.* at ¶¶ 49-57.

The Amended Complaint also alleges that Nationstar did not provide a separate notice of acceleration as allegedly required by paragraph 11 of the Note (*id.* at ¶¶ 61-62) and that Nationstar allegedly failed to send the 3.1 and 3.2 Notices because they were "mailed by certified mail instead of regular mail." *Id.* at ¶¶ 77, 78, 79, 78'.[1]

Based on these allegations, the Amended Complaint alleges that Nationstar used "deceptive" or "unconscionable" means to collect or attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e or 1692f.  Am. Compl. at ¶¶ 82-89.  Specifically, Nationstar allegedly made "false, deceptive or misleading misrepresentations or means in connection with the collection of any debt" by sending the Notice of Sale (through Brock) without first complying with the terms of the Mortgage and the Note, without accelerating the Note, and without complying with "the statutory provisions" (presumably §§ 34-27-3.1 and 34-27-3.2).  Am. Compl. ¶¶ 80-81.  The Amended Complaint also alleges that Nationstar threatened to take an action that could not be legally taken in violation of 15 U.S.C. § 1692e(5); threatened "to take nonjudicial action to effect dispossession or disablement of" the Property, which allegedly violated 15 U.S.C. § 1692f(6); and used "unconscionable" means to collect or attempt to collect a debt, which allegedly violated 15 U.S.C. § 1692f. *Id.* at ¶¶ 82-89.

## II.    <u>STANDARD OF LAW</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a).  An issue of fact is only "genuine" if it "may reasonably be resolved in favor of either party." *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 294 (D.R.I. 2007).  A fact is "material" only "when

---

[1] The Amended Complaint contains two paragraphs numbered 78 and two numbered 79.  The second paragraphs so numbered are referred to herein as 78' and 79'.

93229004v.6

it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." *Id*.

The moving party bears the initial responsibility of informing the court "of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden by demonstrating an absence of evidence to support the nonmoving party's case. *Rochester Ford Sales, Inc. v. Ford Motor Co*., 287 F.3d 32, 38 (1st Cir. 2002). The burden then shifts to the nonmovant, who, to avoid summary judgment, must demonstrate by competent evidence the existence of issues of fact that are both genuine and material to its claim. *United States v. Citizens Bank*, 50 F. Supp. 2d 107, 109 (D.R.I. 1999). For each issue, the nonmoving party "must present definite, competent evidence to rebut the motion." *United States v. One Parcel*, 960 F.2d 200, 204 (1st Cir. 1992). Failure to satisfy that burden compels the Court to enter summary judgment on the moving party's behalf. *Id*.

## III.   <u>ARGUMENT</u>

The Amended Complaint alleges that Nationstar used "deceptive" or "unconscionable" means to attempt to collect a debt in violation of the FDCPA when Brock sent Plaintiff the Notice of Sale to schedule a non-judicial foreclosure sale in accordance with the requirements of Rhode Island law. Am. Compl. at ¶¶ 82-89. To establish an FDCPA claim, a plaintiff must establish three elements: "(1) that [plaintiff] was the object of collection activity arising from consumer debt; (2) defendants are debt collectors as defined by the FDCPA; and (3) defendants engaged in an act or omission prohibited by the FDCPA." *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24 (D. Mass. 2014) (internal citations and quotation marks omitted).

93229004v.6

For the purpose of this motion, Nationstar will assume that it is a debt collector, thus satisfying element two. However, because Plaintiff's personal obligation was discharged, the Mortgage is not a consumer debt, Plaintiff was not the object of collection activity, and Nationstar did not engage in any act prohibited by the FDCPA. Any technical irregularity with the non-judicial foreclosure process cannot be viewed as "deceptive" or "unconscionable" (Am. Compl. ¶¶ 81, 89, quoting 15 U.S.C. §§ 1692e, 1692f) under the totality of the circumstances. For any one of these reasons, summary judgment must enter in Nationstar's favor.

### A. Plaintiff Was Not The Object Of Collection Activity Arising From A Consumer Debt.

#### 1. The Mortgage Was Not A "Consumer Debt" Within The Meaning Of The FDCPA Because The Plaintiff Received A Bankruptcy Discharge.

The FDCPA only applies to attempts to collect a "debt." 15 U.S.C. §1692e. A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "Although this language is broad, it is plain that the *sine qua non* of a debt is the existence of an obligation (actual or alleged)." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002).

Where the obligation has been discharged in bankruptcy, it is no longer considered a "debt" as defined in the FDCPA. *Id.* Because "a discharge extinguishes … the personal liability of the debtor … a discharged debt carries with it no personal obligation to pay money" and does not fall within the FDCPA's definition of a "debt." *Id.* Thus, enforcing a security interest after the underlying obligation has been discharged in bankruptcy court is not considered collecting a "debt" under the general provisions of the FDCPA. *See Speleos v. BAC Home Loans Servicing, L.P.,* 824

F. Supp. 2d 226, 232 (D. Mass. 2011).  Because a mortgagor, after receiving a chapter 7 bankruptcy discharge, "is not liable for any deficiency between the price secured at foreclosure and the amount owed on the Mortgage" the discharged Mortgage does not fall within the FDCPA's definition of "debt." *Shaw v. Bank of Am., N.A.*, No. 10-CV-11021, 2015 WL 224666, at *6 (D. Mass. Jan. 15, 2015).

Plaintiff contends that Nationstar is a debt collector, but "[t]he analysis … does not stop there." *Shaw,* 2015 WL 224666, at *6.  The FDCPA **only applies when that "debt collector" is attempting to collect a "debt" as defined by the FDCPA.**  *Id.*; see also *Arruda*, 310 F.3d at 23 ("The practices that [the FDCPA] proscribes are in connection with the collection of debts, [which requires] any *obligation* to pay money—the crux of 'debt' as that term is defined by the FDCPA.")

Here, the Mortgage is not a "debt" because Plaintiff is not under any obligation to pay it. Plaintiff obtained a discharge of her obligation from the Bankruptcy Court.  Facts at ¶ 28.  Because Ms. Lema has no "obligation … to pay money" on the Mortgage, the Mortgage is not a "debt" within the scope of the FDCPA.  Because there is no "debt," Nationstar's actions toward Ms. Lema are not subject to the FDCPA even if generally it is considered a "debt collector."  Summary judgment should enter for Nationstar.

> ## 2.   Sending a Notice of Foreclosure Sale is Not Collection Activity Under the FDCPA.

The Amended Complaint alleges that Nationstar violated the FDCPA by sending the Notice of Sale.  Am. Compl. ¶¶ 81-84.  While Plaintiff contends that the Notice of Sale was not permitted by the Mortgage for a variety of reasons, sending a notice of non-judicial foreclosure sale is not an attempt to collect a debt.

The Supreme Court has held that law firms that engage exclusively in non-judicial foreclosure proceedings are not "debt collectors" as defined in the FDCPA, because non-judicial

foreclosure proceedings are merely the enforcement of security interests, not an attempt to collect a debt as defined in the FDCPA. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1039 (2019) ("because he who wills the ends must will the necessary means, we think the Act's (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so."). Relying on *Obduskey*, this Court has previously held that the FDCPA does not apply to a law firm that conducted a non-judicial foreclosure proceeding in Rhode Island by sending a notice of sale, publishing notices of the sale, and conducting the foreclosure proceeding. *Fitch v. Fed. Hous. Fin. Agency*, No. CV 18-214-JJM-PAS, 2019 WL 6840768, at *3 (D.R.I. Dec. 16, 2019) (*McConnell, J.*); *see also Cordeiro v. Carrington Mortg. Servs., LLC*, No. CV 19-510 WES, 2020 WL 3404742, at *4 (D.R.I. June 19, 2020) (*Smith, J.*) (sending notice of sale, publishing the notice in a newspaper, and procuring an auctioneer "are steps in the nonjudicial foreclosure process" that are not subject to the FDCPA). Likewise, Nationstar's sending the Notice of Sale (through Brock) was merely a step in the non-judicial foreclosure process, which was not subject to the FDCPA. Notably, the Notice of Sale does not contain any demand for payment or even state any amount of money alleged to be owed, and therefore was not an attempt to collect a debt.

Some courts have held that a notice of foreclosure sale may be an attempt to collect a debt **_only_** if the notice also states an intention to seek a deficiency judgment after the sale. *Pimental v. Wells Fargo Bank, N.A.*, No. CA 14-494S, 2015 WL 5243325, at *6 (D.R.I. Sept. 4, 2015) (*Sullivan, M.J.*) ("Some courts have drawn a distinction between communications intended solely to initiate nonjudicial foreclosure to enforce the mortgagee's security interest, and those that also seek a personal judgment against the debtor for a deficiency, which would plainly amount to debt collection.") (collecting cases), report and recommendation adopted, No. CV 14-494 S, 2016 WL 70016 (D.R.I. Jan. 6, 2016). Without a statement of an intention to seek a deficiency, a notice of

foreclosure sale is an *in rem* action against the Property only and does not constitute an attempt to collect a debt.

Here, the Notice of Sale did not state any intention to collect a deficiency judgment. In contrast, the Notice of Sale expressly stated, in bold, capital letters, that it should **not** be construed as an attempt to collect a debt because Ms. Lema had received a bankruptcy discharge. *See* **Exhibit A-13**.[2] Courts routinely hold that similar disclaimers confirm that the notice of foreclosure sale is an attempt to enforce the security interest only and not to collect a debt against the mortgagor. *Shaw*, 2015 WL 224666, at \*6 (notice of foreclosure sale that stated "[i]f you are currently in bankruptcy or have received a discharge in bankruptcy as to this obligation, this notice is intended for information purposes only and is not an attempt to collect a debt ...." was not an attempt to collect a debt."); *In re Lemieux*, 520 B.R. 361, 366 (Bankr. D. Mass. 2014) ("[e]ven a hypothetical unsophisticated consumer should understand after reading the … disclaimer … that the monthly statements are not demands for payment").

Because sending a notice of non-judicial foreclosure sale is not an attempt to collect a debt, and specifically the Notice of Sale did not contain any demand for payment, Nationstar did not

---

[2] Immediately preceding this statement, the Notice of Sale also states that "[t]his communication is from a debt collector" (referring to Brock) and that "[t]his is an attempt to collect a debt, and any information obtained will be used for that purpose." However, courts have recognized that this disclaimer statement, included to ensure compliance with the FDCPA, does not convert activity that is not an attempt to collect a debt into debt collection activity. *Pimental*, 2015 WL 5243325, at \*5 ("The inclusion of this advisory in written correspondence related to a debt does not alter the legal status of the communication under FDCPA from something else to debt collection"); *Laccinole v. Twin Oaks Software Dev., Inc.*, No. CA 13-716 ML, 2014 WL 2440400, at \*10 (D.R.I. May 30, 2014), aff'd No. 14-1705 (1st Cir. Apr. 27, 2015) ("the inclusion of a collection disclaimer statement is seen by courts as a well-accepted solution to the Hobson's choice posed by the unsettled law of FDCPA.").

violate the FDCPA when Brock sent the Notice of Sale to Ms. Lema.  Nationstar is entitled to summary judgment on Plaintiff's FDCPA claim.

### B.   Nationstar Did Not Engage In An Act Prohibited By The FDCPA.

Even assuming, *arguendo*, that sending the Notice of Sale was an attempt to collect a debt subject to the FDCPA, summary judgment should still enter for Nationstar because the Notice of Sale was not "unconscionable" in violation of 15 U.S.C. § 1692e or "deceptive" in violation of 15 U.S.C. § 1692f.  The Amended Complaint alleged that sending the Notice of Sale violated the FDCPA in one of several ways:

(1)   Because Nationstar allegedly failed to comply with the terms of the Note and Mortgage and statutory pre-foreclosure notice requirement, the Notice of Sale allegedly constituted "false, deceptive, or misleading representations" in alleged violation of 15 U.S.C. § 1692e (Am. Compl. ¶¶ 80-81);

(2)   The Notice of Sale constituted a "threat to take an action that cannot legally be taken" in alleged violation of 15 U.S.C. § 1692e(5) (Am. Compl. ¶ 82);

(3)   The Notice of Sale allegedly contained a threat "to take nonjudicial action to effect dispossession or disablement of Plaintiff's property" in alleged violation of 15 U.S.C. § 1692f(6) (*id.* at ¶¶ 83-84); and

(4)   The Notice of Sale allegedly also "constitutes an unconscionable means to collect or attempt to collect a debt" in alleged violation of 15 U.S.C. § 1692f (Am. Compl. ¶¶ 88-89).

As set forth below, none of Plaintiff's theories have any merit and Nationstar is entitled to judgment as a matter of law.

### 1.   The Notice Of Sale Did Not Constitute "Deceptive" Or "Unconscionable" Means To Collect A Debt.

The Amended Complaint alleged that the Notice of Sale sent by Brock was deceptive and/or unconscionable because Nationstar allegedly did not comply with paragraph 22 of the Mortgage, paragraph 11 of the Note, *R.I. Gen. Laws* § 34-27-3.1, or *R.I. Gen. Laws* § 34-27-3.2.

14

(Am. Compl. at ¶¶ 81, 89).  This argument fails because there is no genuine issue that Nationstar complied with all requirements before sending the Notice of Sale.

### a.  **Nationstar Complied With Paragraph 22 of the Mortgage**.

Nationstar sent the Notice of Default in compliance with Paragraph 22 of the Mortgage on April 10, 2018, following Ms. Lema's default that occurred a mere two months after the 2017 Modification's effective date.

### (1) **Nationstar Properly Mailed the Notice of Default to Ms. Lema**.

Nationstar mailed four copies of the Notice of Default *via* both first class and certified mail to Ms. Lema at the Property and at her attorney's address.  Facts at ¶ 29.  The Amended Complaint admits that Ms. Lema's attorney received the Notice of Default and that the Notice of Default was sent by certified mail to the Property—and notably that Ms. Lema "never picked [it] up."  Am. Compl. ¶¶ 35, 37.  Ignoring these admissions, the Amended Complaint inexplicably alleges that Nationstar violated Paragraph 22 of the Mortgage by not sending the Notice of Default first class mail (uncertified) to the Property.  *Id.* at ¶¶ 38-41.  This is quite simply not true.

There is no genuine dispute that Nationstar sent the Notice of Default to the Property address by first class mail.  Nationstar's representative, who is familiar with Nationstar's procedures for mailing documents, attested that Nationstar, following its usual procedure, sent the four copies of the Notices of Default to Walz who mailed the documents out **by both regular first class and certified mail to Ms. Lema's attorney**[3] ***and* to the Property address**.[4]  Facts ¶¶ 34-36 and **Exhibit A-7**.

---

[3] Notably, Ms. Lema's attorney **admits receiving it**.  Am. Compl. ¶ 35.

[4] Further, the admission in the Amended Complaint that Nationstar sent the Notice of Default to the Property by certified mail, which is a form of first class mail, satisfies the requirements of

The First Circuit affirmed summary judgment based on an affidavit worded similarly to that of Nationstar's representative, showing a loan servicer's records that a notice was mailed by a third party vendor. *See Donahue v. Fed. Nat'l Mortg. Ass'n*, 980 F.3d 204, 208 (1st Cir. 2020) (relying on "affidavits from [the loan servicer's] employee 'validating that the letter was sent in accordance with [the loan servicer's] regular practice[ ]' to send certified letters to comply with the HUD regulation," and noting that the loan servicer's records showed the date of mailing and contained copies of the tracking information); *see also Donahue v. Fed. Nat'l Mortg. Ass'n*, No. 17-CV-10635-DJC, 2019 WL 2176939, at *3 (D. Mass. May 20, 2019) (describing evidence that notices were mailed).

According to Nationstar's representative, its business records and customer account history demonstrate that the Notice of Default was sent to the Property by both regular first class and certified mail and sent to Ms. Lema's attorney by both regular first class and certified mail.  The provisions of Paragraphs 15 and 22 are not games for attorneys to play; they are a mechanism for providing notice to a borrower of the potential consequences of their default.  Ms. Lema and her attorney were provided notice but intentionally ignored the Notice of Default. Am. Compl. ¶ 37 (admitting that the Notice of Default was sent by certified mail but "never picked up"). Nationstar's actions were in no way "unconscionable" or "deceptive" in violation of the FDCPA and Nationstar is entitled to summary judgment.

---

Paragraphs 15 and 22 of the Mortgage.  *U.S. Bank Nat'l Ass'n as Tr. v. Torres*, No. 20-CV-00227-MSM-LDA, 2021 WL 4155080, at *5 (D.R.I. Sept. 13, 2021) (*McElroy, J.*) (because certified mail is a type of first class mail, notice of default sent by certified mail was sent in compliance with paragraph 15 of the mortgage that required notices be sent by first class mail) (collecting cases).

**(2) The Notice of Default strictly complied with Paragraph 22.**

There is no genuine dispute that the Notice of Default stated the following in compliance with Paragraph 22 of the Mortgage, as shown below:

| Requirement of Paragraph 22 | Statement in the Notice of Default |
|---|---|
| "The notice shall specify: (a) the default; | "Your loan is currently past due for the 12/01/2017 payment and is due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan." |
| (b) the action required to cure the default; | "In order to cure this default, you must pay the total amount due of $10,962.26 in addition to other amounts that become due from the date of this letter through the date you pay." |
| (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and | "$10,962.26 must be paid by 05/15/2018 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default." |
| (d) That failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. | "Failure to pay $10,962.26 by 05/15/2018 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property." |
| The notice shall further inform Borrower of the right to reinstate after acceleration | "In the event of acceleration, you have the right to reinstate the loan after acceleration |
| and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." | and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." |
| **Exhibit A-2** at ¶ 22. | **Exhibit A-7**. |

The Notice of Default indisputably strictly complied with the requirements of Paragraph 22. All of the Amended Complaint's allegations with respect to the Notice of Default fail:

93229004v.6

- The Notice of Default's statement that "[a]ll reinstatement payments must be made in certified funds," does not refer to the cure amount as the reinstatement amount, which refers to an amount paid after the mortgage loan has been accelerated. *Contra* Am. Compl. at ¶¶ 51, 52. The Notice of Default clearly advised the borrower of both (1) the steps required to cure the default and (2) the right to reinstate after acceleration. The statement that "reinstatement payments must be made in certified funds," does not make the Notice of Default non-compliant with Paragraph 22.

- The legal fees ($1,281.00) included in the Notice of Default were properly incurred and assessed pursuant to Paragraph 9 of the Mortgage, in connection with the borrower's bankruptcy case (**Exhibit A-2** at ¶ 9), **not** pursuant to Paragraph 19 (which requires the borrower to pay for reasonable expenses incurred to enforce the Mortgage only after acceleration). *Id.* at ¶¶ 54-55.

- The Notice of Default tracked the language of Paragraph 22 concerning the right to reinstate after acceleration and does not contradict Paragraph 19 in any way. Plaintiff, who did not offer a reinstatement payment to Nationstar, has no evidence to demonstrate that Nationstar would not have accepted certified funds in an amount sufficient to reinstate the loan up to the date of the foreclosure. *Id.* at ¶ 55.

- The Notice of Default did not limit the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale "by stating that a borrower could only bring a court action after acceleration of the mortgage note." Am. Compl. at ¶ 59. As seen above, the Notice of Default properly tracks the language of Paragraph 22.

- Whether Paragraph 11 of the Note[5] required a separate notice of acceleration is irrelevant to the sufficiency of the Notice of Default. *Id.* at ¶¶ 61-62. The terms of the Note do not apply because the exercise of the power of sale is a right found in the Mortgage, not the Note. *Woel v. Christiana Tr. as Tr.*, 228 A.3d 339, 345 (R.I. 2020) ("the right to exercise the power of sale is derived from the mortgage contract itself") (citing *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1085 (R.I. 2013)).

Thus, the Notice of Default complied with Paragraph 22 of the Mortgage. Even if the Plaintiff were to prove some technical variation between the Notice of Default and the requirements of the Mortgage, such hyper-technical interpretations of the wording of a notice are not sufficient to demonstrate any violation of the FDCPA. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d

---

[5] Paragraph 11 applies only when "all or any part of the Property or any Interest in the Property is sold or transferred." **Exhibit A-1**. That paragraph does not apply to a default under Paragraph 22 of the Mortgage, which says the Lender may accelerate "without further demand." **Exhibit A-2**.

93229004v.6

98, 103 (1st Cir. 2014) ("[a] debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter.").  Further, because Plaintiff maintains that she "never received the April 10, 2018 letter" (Am. Compl. ¶ 40), she cannot claim that any of the technical arguments her attorney makes regarding the Notice of Default was "unconscionable" or "deceptive" toward her in violation of the FDPCA.

### b.  <u>Nationstar Complied With *R.I. Gen. Laws* §34-27-3.1.</u>

*Rhode Island General Laws §* 34-27-3.1, which was repealed, "required mortgagees to advise mortgagors of the availability of mortgage counseling services through HUD-approved mortgage counseling agencies prior to initiating a non-judicial foreclosure sale in accordance with § 34-27-4(b)."  *Ocwen Loan Servicing, LLC v. Medina*, 247 A.3d 140, 143 (R.I. 2021).[6]  Here, even though it was repealed, Nationstar fully complied with *R.I. Gen. Laws §* 34-27-3.1.  On August 21, 2018, Nationstar, through its counsel, sent the 3.1 Notice to Plaintiff by certified mail to her attorney's address and to the Property address.  Facts at ¶ 39.  Any claim that sending the 3.1 Notice *via* certified mail did not constitute first class mail fails for the reasons set forth in footnote 6, *supra*.  *Torres*, 2021 WL 4155080, at *5.  Thus, the statute was satisfied and Nationstar's actions were not unconscionable or deceptive.

### c.  <u>Nationstar Complied With *R.I. Gen. Laws* §34-27-3.2.</u>

The Amended Complaint alleges that Nationstar failed to comply with Rhode Island General Laws § 34-27-3.2 because the 3.2 Notice was allegedly "mailed by certified mail instead

---

[6] The Rhode Island Supreme Court clearly stated that Section 34-27-3.1 was "repealed" and spoke of its requirements in the past tense.  *Medina*, 247 A.3d at 143.  Even if, however, it was revived when P.L. 2014 ch. 543, § 2 sunset on July 1, 2018, any technical violation in the 3.1 Notice would not constitute "unconscionable" or "deceptive" behavior in violation of the FDPCA.

93229004v.6

of regular mail." Am. Compl. ¶ 78. Paragraph (d) of that statute requires some mortgagees to send a written notice to the mortgagor offering to participate in a mediation conference prior to foreclosure but does not specify any particular method of mailing. *R.I. Gen. Laws* § 34-27-3.2(d). Nationstar sent the 3.2 Notice to Plaintiff by both first class mail and by certified mail to both her attorney's address and to the Property address on May 24, 2018. Facts at ¶¶ 37-38; **Exhibit A-9**. There is no genuine issue that Nationstar "provide[d]" Plaintiff with the 3.2 Notice.

### 2. Nationstar Did Not Threaten To Take An Action That Could Not Legally Be Taken.

The Amended Complaint alleges that the Notice of Sale constituted "a threat to take an action that could not be legally taken" in violation of 15 U.S.C. § 1692e(5). Am. Compl. ¶ 82. Even if the Amended Complaint were correct that the Notice of Default were insufficient, or that other required pre-foreclosure notices were not properly given, and thus that Nationstar could not proceed with a foreclosure sale on January 30, 2019, sending the Notice of Sale was not a "threat to take any action that cannot legally be taken"—in violation of 15 U.S.C. § 1692e(5)—because Nationstar could legally conduct a foreclosure sale, after sending the required notices. *Heagerty v. AMIP Mgmt., LLC*, No. 1:20-CV-02727-SCJ-RGV, 2021 WL 2587720, at *12 (N.D. Ga. Apr. 20, 2021) ("Since defendants retained the legal authority to foreclose, [defendants] did not threaten to take action that could not legally be taken, but simply failed to meet 'antecedent steps required under state law to enforce a security interest,' based on deficiencies in the challenged notice.") (citations omitted). The Mortgage contains a power of sale. Plaintiff defaulted on the Mortgage. The power of sale can legally be exercised. Nationstar did not violate 15 U.S.C. § 1692e(5).

20

3. **Nationstar Did Not Threaten Dispossession Or Disablement Of Plaintiff's Property.**

The Amended Complaint alleges that the Notice of Sale "threatened to take nonjudicial action to effect dispossession or disablement of Plaintiff's property" in alleged violation of the FDCPA, 15 U.S.C. § 1692f(6). Am. Compl. ¶ 83. Quite simply, this allegation has no basis in fact. The Notice of Sale, which mirrors the requirements of *R.I. Gen. Laws* § 34-27-4, never threatened to take possession of the Property using non-judicial means or to disable the Property in any way. *See* **Exhibit A-13**. The Notice of Sale simply states "[t]he premises described in the mortgage will be sold … at public auction on January 30, 2019." *Id.* A non-judicial foreclosure sale by itself does not affect possession of the Property. There is no genuine issue that Nationstar did not violate 15 U.S.C. §1692f(6).

4. **Nationstar Did Not Act in Any "Unconscionable" Or "Deceptive" Way Toward Plaintiff.**

Even if the Notice of Default did not fully comply with all requirements of Paragraph 22 of the Mortgage, or any one of the other pre-foreclosure notices was insufficient, it cannot be said that Nationstar acted "deceptively" or "unconscionably" toward Plaintiff. Nationstar offered Plaintiff the 2017 Modification, which reduced the interest rate to 4.25%, extended the maturity date 40 years to September 1, 2057, and deferred $93,100.79, without interest, all in an attempt to make the Mortgage affordable for Plaintiff. **Exhibit A-6**. However, after making only two modified payments, Plaintiff defaulted on the 2017 Modification on December 1, 2017. Facts at ¶ 21. Nationstar sent the Notice of Default in an attempt to comply with Paragraph 22 of the Mortgage, sent the 3.1 Notice and the 3.2 Notice in an attempt to comply with those statutes, and sent the Notice of Sale to notify Plaintiff of the foreclosure sale. Facts ¶¶ 29, 37, 40, 41. The foreclosure sale was canceled after Ms. Lema filed this action. Facts ¶ 43. On July 23, 2019,

21

Nationstar approved Plaintiff for a short sale of the Property.  Facts ¶ 44.  Through the short sale, Plaintiff received the benefit of a $99,852.23 reduction in the lien and $3,000.00 in cash.  Facts ¶¶ 46-47.  Granting all these benefits to Plaintiff despite her unwillingness to pay even a reduced amount of the Mortgage hardly shows any unconscionable or deceptive act by Nationstar and thus Nationstar is entitled to summary judgment.

## IV.   <u>CONCLUSION</u>

The Notice of Sale was not an "attempt to collect a debt" because the Mortgage was not a "debt" as defined in the FDCPA and sending a notice of non-judicial foreclosure proceeding is not subject to the FDCPA.  Even if the FDCPA applied, nothing Nationstar did constitutes "unconscionable" or "deceptive" conduct or any other alleged violation of the FDCPA.  Indeed, Nationstar gave the Plaintiff a $99,852.23 reduction in the lien and $3,000.00 in cash, which cannot be said to be "unconscionable" or "deceptive."  For these reasons, Nationstar respectfully requests that the Court enter summary judgment in Nationstar's favor on the Plaintiff's FDCPA claim.

NATIONSTAR MORTGAGE LLC

By its Attorneys,


/s/ *Krystle G. Tadesse*
Joseph A. Farside, Jr. (#7559)
Krystle G. Tadesse (#7944)
Jeffrey C. Ankrom (#7663)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6111 (facsimile)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com
jeffrey.ankrom@lockelord.com

Dated:  October 22, 2021

93229004v.6

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 22nd day of October, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as non-registered participants.

*/s/ Krystle G. Tadesse*
Krystle G. Tadesse

93229004v.6