UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIELLE LEMA,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, NATIONSTAR MORTGAGE, LLC,<br><br>        Defendant. | C.A. No. 1:19-cv-00036-JJM-LDA |

## **OBJECTION TO MOTION TO STRIKE AFFIDAVIT**

Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") objects to the *Motion to Strike Affidavit of AJ Loll and Exhibits A-7, A-9 and A-11* ("Motion to Strike") [ECF 76] filed by plaintiff Danielle Lema ("Plaintiff"). The Motion to Strike attacks the *Affidavit of A.J. Loll* [ECF No. 71-1] ("Affidavit"), filed in support of Nationstar's Motion for Summary Judgment, specifically, certain statements in the Affidavit and documents authenticated by the Affidavit, notwithstanding the fact that Plaintiff actually admits many of the assertions therein. Because the affiant A.J. Loll ("Mr. Loll") properly authenticated and relied on Nationstar's business records, the evidence in the Affidavit is admissible and should be considered for purposes of summary judgment.

**I.    BACKGROUND**

Plaintiff's Amended Complaint alleges that Nationstar violated the Fair Debt Collection Practices Act ("FDCPA") by sending a notice of non-judicial foreclosure sale as required by state law, when it allegedly had not mailed certain notices by first class mail, but rather only by certified mail that Plaintiff refused to accept. Amended Complaint ¶¶ 35-37, 77-84. On October 22, 2021, Nationstar filed a Motion for Summary Judgment arguing that it is entitled to judgment as a matter

of law because sending a notice of non-judicial foreclosure sale without a demand for payment does not constitute an attempt to collect a debt, and in any event, Nationstar, through its vendor, sent the required notices by first class mail.

In support of its Motion for Summary Judgment, Nationstar submitted the Affidavit of Mr. Loll, a vice president of Nationstar.  Affidavit at ¶ 2.  The Affidavit states that Mr. Loll reviewed and "was familiar with and have access to the Records for the subject loan, which I have reviewed to verify the accuracy of this affidavit." *Id.* at ¶ 3.  Mr. Loll has "personal knowledge of Nationstar's procedures for creating and maintaining the Records," which were "(a) made at or near the time of the occurrence of the matters; (b) made by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; [and] (c) kept in the course of Nationstar's regularly conducted business activities." *Id.*

The Affidavit also describes the "electronic records of communications and activities related to a mortgage account" that "Nationstar creates and maintains."  *Id.* at ¶ 27.  Mr. Loll "personally examined the electronic records that Nationstar created and maintained with regard to the Plaintiff's mortgage loan secured by the Property." *Id.*  Mr. Loll verified and attached "[a] true and accurate copy of a portion of Nationstar's communications and activity history ("History") relating to Plaintiff's account from the date Nationstar offered the 2017 Modification (August 28, 2017) until the end of the report (September 30, 2020)" as **Exhibit A-8**. *Id.*

The Affidavit also describes "Nationstar's procedures and practices for mailing notices to its borrowers," which Nationstar accomplishes through "a vendor named Covius Services LLC, which has a division known, or formerly known, as The Walz Group ('Walz')."  Affidavit at ¶ 28.

Mr. Loll stated that, in accordance with Nationstar's regular procedures, certain letters were mailed to Plaintiff as follows:

> Nationstar sends documents to Walz by a daily data file via SFTP. Walz retrieves the documents electronically and print and mail the documents for Nationstar. After mailing, it is and was Walz' regular practice to provide Nationstar with confirmation that the letter was mailed to the borrower. This procedure has been followed consistently by Nationstar and was followed in April 2018. There is nothing in the History or the Records that indicates that Nationstar's procedure was not followed in this case or was deviated from in any way.

Affidavit at ¶ 29. The Affidavit explains that Nationstar's History for Plaintiff's account confirms that Walz mailed the letters on Nationstar's behalf, including (1) four entries on April 11, 2018 stating "Demand Letter Sent by Walz;" (2) four copies of the Notice of Default contained in Nationstar's business records (**Exhibit A-7**), (3) two entries on May 23, 2018 indicating that Walz received and sent the Notice of Mediation; (4) two copies of the Notice of Mediation contained in Nationstar's business records (**Exhibit A-9**). Mr. Loll also authenticated letters contained in Nationstar's business records (**Exhibit A-11**) that were mailed by Nationstar's former attorneys at Shechtman Halperin Savage LLP. Plaintiff submitted no evidence to contradict those facts. *See Plaintiff's Statement of Disputed Facts in Support of its Opposition to Motion for Summary Judgment* (ECF No. 78-2, Feb. 20, 2022) at ¶¶ 29-41.

## II.     STANDARD OF LAW

*Fed. R. Civ. P.* 56(c)(4) requires an affidavit submitted in support of a motion to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Business records are admissible evidence, and thus acceptable for summary judgment purposes, pursuant to *Fed. R. Evid.* 803(6), which states the following:

  (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

    (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

    (C) making the record was a regular practice of that activity;

    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Admitting business records pursuant to Rule 803(6) in support of summary judgment requires an affidavit from a "custodian or another qualified witness." *Fed. R. Evid.* 803(6)(D); *U.S. Bank Tr., N.A. as Tr. v. Jones*, 925 F.3d 534, 538 (1st Cir. 2019) ("*Jones*") ("[A] 'qualified witness'" who executes an affidavit that authenticates and draws information from business records "need not be the person who actually prepared the record. … Rather, a 'qualified witness' is 'simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.'"); *HMC Assets, LLC v. Conley*, No. CV 14-10321-MBB, 2016 WL 4443152, at *3 (D. Mass. Aug. 22, 2016) ("it is well established that the witness need not be the person who actually prepared the record. A qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept."). Business records are deemed reliable, without personal knowledge of the recorded events, because a business maintains their reliability when it regularly relies on those records. *Jones*, 925 F.3d at 538, citing *Fed. R. Evid.* 803 advisory committee's note to 1972 proposed rules.

**III.     ARGUMENT**

      **A.     MR. LOLL PROPERLY AUTHENTICATED NATIONSTAR'S BUSINESS RECORDS.**

The Affidavit lays a proper foundation to consider Mr. Loll a "qualified witness" who can provide information based on a review of Nationstar's business records and to admit documents contained within Nationstar's business records. In paragraphs 2 and 3, Mr. Loll attests that he reviewed "the business records of Nationstar," which "include physical and electronic records of loan activity, events and transactions." *Id.* at ¶ 2. He further attests that he has "personal knowledge of Nationstar's procedures for creating and maintaining the Records." *Id.* at ¶ 3.

Based on his personal knowledge, Mr. Loll lays the appropriate foundation for admitting the business records currently maintained by Nationstar, by stating that those records were "(a) made at or near the time of the occurrence of the matters; (b) made by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; [and] (c) kept in the course of Nationstar's regularly conducted business activities." These statements satisfy the requirements of *Fed. R. Evid.* 803(6) and render the documents attached to the Affidavit, and the information Mr. Loll provides based on a review of Nationstar's records, admissible.

      **B.     WALZ'S CONFIRMATION OF MAILING IS INTEGRATED IN NATIONSTAR'S RECORDS AND RELIED UPON BY NATIONSTAR.**

At pages 1-2, the Motion to Strike argues that the Affidavit is insufficient because it "seeks to admit records of The Walz Group as to mailing of documents by a third party with no verification as to the authenticity of those records and with no evidence as to the knowledge by which this witness can attest as to the accuracy of these purported records." The Motion to Strike argues that there is "no evidence as to the knowledge by which this witness can attest as to the accuracy of these purported records and lacks any knowledge of the mailing practices and

5

procedures of the Walz Group." *Id.* at 2.  However, as discussed above, **this is not the proper standard for admissibility of business records**, because a "qualified witness" "need not be the person who actually prepared the record," but only "one who can explain and be cross-examined concerning the manner in which the records are made and kept.'" *Jone*s, 925 F.3d at 538.

Mr. Loll did not introduce any information from Walz's records.  Rather, he introduced information in Nationstar's records that confirm, based on Nationstar's procedures and "Walz' regular practice" with Nationstar, that Walz mailed the documents to Plaintiff and confirmed with Nationstar that the documents were in fact mailed.  Affidavit ¶ 29.  Mr. Loll attested that "[t]his procedure" whereby Walz confirms to Nationstar that it has mailed documents "has been followed consistently by Nationstar and was followed in April 2018," and that "[t]here is nothing in the History or the Records that indicates that Nationstar's procedure was not followed in this case or was deviated from in any way." *Id.*

Nationstar's records show the confirmation from Walz in four entries in Nationstar's History on April 11, 2018, confirming that Walz mailed the Notice of Default, and in two entries in Nationstar's History on May 23, 2018, confirming that Walz mailed the Notice of Mediation. *Id.* ¶¶ 30, 36.  Nationstar also has copies of the mailed documents in its business records (indicating on their face that they were sent by both first class and certified mail), which further demonstrate, in accordance with the procedures that Walz and Nationstar followed, that Walz mailed those documents on Nationstar's behalf as indicated. *Id.* at ¶¶ 33, 37.

The First Circuit has "affirmed the admission of business records containing third-party entries without third-party testimony where the entries were 'intimately integrated' into the business records, or where the party that produced the business records relied on the [third-party] document and documents such as those[ ] in his business." *Jone*s, 925 F.3d at 537 (citation

6

omitted; internal quotation marks omitted); *United States v. Savarese*, 686 F.3d 1, 13 n.8 (1st Cir. 2012) ("[S]everal courts have found that a business record made (in whole or in part) by a third party, but incorporated into the records of another entity, is thereby 'made' by the entity, and thus is admissible if the other requirements of Rule 803(6) are satisfied."). This Court previously followed *Jones* and admitted business records that were created by a predecessor to a loan servicer. *Citibank N.A. v. Caito*, 111 Fed. R. Evid. Serv. 153, 2019 WL 6896309, at *1-2 (D.R.I. Dec. 18, 2019) (rejecting argument that records from prior servicers that merged into Ocwen Loan Servicing, LLC must be separately verified before they may be considered under the business records exception).

Here, the Affidavit demonstrates that Walz's proof of mailing documents to Plaintiff was "intimately integrated" into Nationstar's business records. Mr. Loll described the regular procedure between Nationstar and Walz for mailing documents and confirming the mailing as follows:

- "Nationstar sends the documents to Walz,"
- Walz "print[s] and mail[s] the documents for Nationstar," and
- Walz "provide[s] Nationstar with confirmation that the letter was mailed to the borrower."

Affidavit ¶ 29. The Affidavit confirms that providing Nationstar with confirmation of mailing "is and was Walz' regular practice." *Id.* Nationstar's procedure of having Walz provide confirmation to Nationstar after it mailed the documents is/was "followed consistently by Nationstar and was followed in April 2018." *Id.* This testimony demonstrates that the business records confirming that Walz mailed **Exhibits A-7** and **A-9** to Plaintiff by certified mail and regular first class mail were "intimately integrated" into Nationstar's records and that Nationstar relied on those records. That Nationstar and Walz developed and consistently followed this procedure establishes that the records demonstrating that the documents were mailed bear significant indicia of reliability. *Jones*,

7

925 F.3d at 538 ("The key question is whether the records in question are reliable enough to be admissible.")

### C. THE FIRST CIRCUIT APPROVED A SIMILARLY-WORDED AFFIDAVIT.

The First Circuit recently affirmed the entry of summary judgment based on a similarly worded affidavit showing that a third party had mailed documents. *Donahue v. Fed. Nat'l Mortg. Ass'n*, 980 F.3d 204, 208 (1st Cir. 2020) (relying on affidavit of loan servicer to confirm mailing by a third party and noting that the loan servicer's records showed the date of mailing and contained copies of the tracking information). In *Donahue*, the defendant Federal National Mortgage Association submitted an affidavit of an employee of its then loan servicer, Ocwen Loan Servicing, LLC ("Ocwen"). 2019 WL 2176939, at *3 (D. Mass. May 20, 2019). Ocwen's employee's affidavit stated that according to Ocwen's records, "a certified letter was manually requested," and "sent to Ocwen's vendor who confirmed that the letter was sent." Supplemental Affidavit of Katherine Ortwerth in Support of Ocwen Loan Servicing, LLC's Motion for Summary Judgment ("Ortwerth Affidavit") at ¶ 6, *Donahue v. Fed. Nat'l Mortg. Ass'n*, No. 17-CV-10635-DJC (ECF No. 53-1, Nov. 30, 2018), attached hereto as **Exhibit A**.

The Ortwerth Affidavit stated that Ocwen's business records contained an entry stating that the letter was mailed to the *Donahue* plaintiff and including the certified mail number of that letter. *Id.* ¶ 6. Ocwen's records also contained a copy of the letter that was mailed to the *Donahue* plaintiff. *Id.* ¶ 7. Based on the affiant's "knowledge of Ocwen's procedures, the existence of [the] letter in Ocwen's system, [and] two entries in the Comments Log stating that the letter was requested and mailed to the Plaintiff," the Ortwerth Affidavit affirmed that "the letter was in fact mailed by United States Postal Service certified mail to the Plaintiff." *Id.* ¶ 8. The Ortwerth Affidavit confirmed that "[this procedure has been followed consistently by Ocwen and was

8

followed in February, 2016," and "[t]here is nothing in the records that indicates that Ocwen's procedure was not followed in this case or was deviated from in any way." *Id.* ¶ 9.

The District of Massachusetts accepted the Ortwerth Affidavit as evidence that the letter was sent "based on Ocwen's regular practices and a corroborating entry" in Ocwen's business records. *Donahue*, 2019 WL 2176939, at *5 ("Here, the record reflects that Ocwen sent at least the February 2016 letter by providing a copy of the letter, a USPS tracking number, two Ortwerth affidavits validating that the letter was sent in accordance with Ocwen's regular practices and a corroborating entry from Donahue's file with Ocwen."). Based on these statements in the Ortwerth Affidavit, the First Circuit rejected Donahue's contention that "Ocwen failed to put forth evidence sufficient to demonstrate that it had met its burden of proof to show that it had sent a letter certified by the Postal Service as having been dispatched," finding that it was "not persuasive in light of the evidence from the record just recounted." *Donahue*, 980 F.3d at 208 n.4. On this basis, the First Circuit affirmed the District of Massachusetts' grant of summary judgment.

This Court should reach the same result. The Affidavit here is almost identical to the Ortwerth Affidavit that the First Circuit approved. *Compare* Ortwerth Affidavit at ¶¶ 6-9 with Mr. Loll's Affidavit at ¶¶ 28-33.

### D. PLAINTIFF ADMITTED MOST OF THE INFORMATION THAT MR. LOLL CONFIRMS AND ADMITTED EXHIBITS A-7, A-9 AND A-11.

As provided above, the Affidavit properly provides and authenticates information and documents from Nationstar's business records, in accordance with the principles stated in *Jones*, and in a manner virtually identical to the affidavit approved by the First Circuit in *Donahue*. On those grounds alone the Motion to Strike should be denied. However, as further basis to deny the Motion to Strike, Nationstar notes that **the Plaintiff admitted this information that she now desires to strike**.

9

1. <u>Plaintiff Admitted That Walz Mailed the Notice of Default</u>

Paragraphs 31-34 of the Amended Complaint admit that Nationstar, through Walz, mailed the Notice of Default, by stating that on "April 10, 2018, Nationstar transmitted electronic data regarding [Plaintiff's] mortgage loan and a template to its mail and print vendor, The Walz Group ('Walz') of Temecula, California" who "received the data and template from Nationstar and created a default letter, which was dated April 10, 2018." Am. Compl. ¶¶ 31-33. The Amended Complaint admitted that Walz mailed the Notice of Default to Plaintiff in care of her attorney by first class and certified mail and to the Plaintiff at the Property by certified mail. Am. Compl. ¶¶ 35-37.[1] These allegations are almost identical to the statements in the Affidavit.[2]

2. <u>Plaintiff Admitted Exhibits A-7, A-9, and A-11</u>

Page 11 of the Motion to Strike also argues that **Exhibits A-7, A-9**, and **A-11** should be stricken. However, Plaintiff acknowledged and even attached these documents in the Amended Complaint. Plaintiff attached the Notice of Default, **Exhibit A-7**, to the Amended Complaint as Exhibit C, thus admitting its authenticity.

**Exhibit A-9** is a document entitled "Notice of Mediation Conference Pursuant to *R.I. Gen. Laws* § 34-27-3.2." The Amended Complaint admitted that this document was mailed to Plaintiff by certified mail. Am. Compl. ¶ 78.

**Exhibit A-11** is a document entitled "Notice of Default and Mortgagee's Right to Foreclose and Notice of Availability of Mortgage Counseling Services." This document was formerly required by the repealed *R.I. Gen. Laws* § 34-27-3.1. The Amended Complaint admitted

---

[1] The only difference between what the Affidavit states and what the Amended Complaint alleges is whether the Notice of Default was mailed by first class mail (uncertified) to Plaintiff at the Property address. Am. Compl. ¶ 36'.

[2] The only difference between what the Affidavit states and what the Amended Complaint alleges is whether Nationstar sent Walz the image of the Notice of Default for printing and mailing or sent "data and template" from which Walz created the Notice of Default. Am. Compl. at ¶ 33.

110666607v.2

that this document was mailed to Plaintiff by certified mail. Am. Compl. ¶ 78'. Plaintiff also admitted **Exhibit A-11** in *Plaintiff's Statement of Disputed Facts in Support of its Opposition to Motion for Summary Judgment* (ECF No. 78-2, Feb. 20, 2022) at ¶¶ 40-41.

In short, because Plaintiff admitted the documents at **Exhibits A-7, A-9**, and **A-11**, and admitted that those documents were mailed by certified mail, Plaintiff has failed to demonstrate why **Exhibits A-7**, **A-9**, and **A-11** should be stricken.

### IV.   CONCLUSION

The Affidavit properly lays a sufficient foundation, based on Mr. Loll's personal knowledge of Nationstar's record-keeping practices and of Nationstar's procedures for confirming that documents were mailed by Walz, to admit evidence and documents in support of Nationstar's Motion for Summary Judgment. In *Donahue*, the First Circuit affirmed summary judgment based on a nearly identical affidavit. The Plaintiff has already admitted most of the information in the Affidavit, and admitted that the documents attached as **Exhibits A-7, A-9**, and **A-11**, were mailed to Plaintiff. The Motion to Strike is meritless, contrary to established precedent, and should be denied.

NATIONSTAR MORTGAGE LLC
By its Attorneys,

/s/ *Jeffrey C. Ankrom*
Joseph A. Farside, Jr. (#7559)
Krystle G. Tadesse (#7944)
Jeffrey C. Ankrom (#7663)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6111 (facsimile)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com
jeffrey.ankrom@lockelord.com

Dated: March 30, 2022

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 30th day of March, 2022, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as non-registered participants.

*/s/ Jeffrey C. Ankrom*
Jeffrey C. Ankrom

110666607v.2